DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of a judgment by the Erie County Court of Common Pleas affirming a denial of an application for a conditional use permit. For the reasons that follow, we reverse.
 {¶ 2} Appellant, David Price, is the successor-in-interest to Luther and Donald Troike ("the applicants"). On or about May 26, 2000, the applicants filed an application for conditional use in order to obtain permission to conduct a tire retreading business on property located in a C-2 commercial district. An area zoned C-2 commercial is a general commercial district that generally allows for the operation of repair and retail establishments and conditionally allows for the operation of automobile service stations and repair garages.
 {¶ 3} Prior to the filing of the application, appellant had contacted Margaretta Township Zoning Inspector, Frank Knerr, to inquire about obtaining the requisite approvals for the proposed use of the property. Knerr initially believed the proposed use constituted an automobile service station. As a result, he required the filing of an application for a conditional use permit that would allow for the operation of the applicants' tire retreading business in the C-2 district.
 {¶ 4} Hearing on the application was held before the Margaretta Township Zoning Board of Appeals, appellee, ("the board") on June 19, 2000. At the hearing, individuals testified under oath. Appellant, who was representing the interests of the applicants, testified as to the tire retreading process and answered questions posed by individual board members:
 {¶ 5} "[Board member] Gary Pooch said that his biggest concern is the retreading of it, and what is involved in it. Dave Price informed the board that you buff the tire then you apply a new tred and put it in a pressure vessel, cure it, that's simplified quite a bit, but that's basically it. Gary Pooch you grind completely all of the rubber down, take the casing off of it. Dave Price, we take all of the existing tred design off of it, and replace it. Gary Pooch, in this process do you have to heat this rubber? Dave Price, yes the tread rubber comes in with the tread design already in it, all that we cure is a 30,000th thick piece of rubber around the tire that bonds the casing and the tread together. It's about a 3 hour we cure about 22 tires at a time, and it's about 3-31/2 hours to do that. Gary Pooch asked if there were any odors involved, or smoke? Dave Price, not anything, I guess I've been around it all my life, no not anything that is noticeable. As I mentioned before the retread shop we had in Fremont is in the middle of a residential neighborhood, and never had any complaints as far as smoke, noise, aroma, anything like that in that location. Gary Pooch what's the temperature? You don't think there is smoke or anything that comes off of these tires? Dave Price, no, it's completely enclosed in the chamber, it's a pressurized, it's like a pressure cooker basically. The tires are inside of it and there's 115 pounds in the tire and 85 pounds in the chamber, so it's totally enclosed when they're being cured. [Board member] Dale Meyer asked the board if there was anything else. [Board member] William Kramer asked if you had to bring the temperature up with electric then. Dave Price said right. Gary Pooch asked if there was any dust or dirt involved when you regrind these off. Dave Price said that the trailer that he mentioned that will set there will collect the rubber dust that comes off of the tire. It's not really a dust it's more of a granular, I'm trying to think, it would be bigger consistency than sugar, so I mean it's not a real fine granular either. William Kramer, what's it do blow into the truck? Dave Price, yes it's like a van trailer it's blown right in there and they just swap trailers." [Spelling, grammar, and punctuation sic.]
 {¶ 6} Immediately following this discourse, Knerr informed the board that he had previously told appellant that the proposed use constituted an automobile service operation and would not be considered as a manufacturing operation. Knerr also stated that at the time he made that representation to appellant he believed the determination to be entirely within his discretion. Knerr then told the board that he had received new information from the county prosecutor's office indicating that the board could disregard his opinion and overrule his determination on the issue.
 {¶ 7} The hearing continued, and individual landowners testified as to their concerns about the effects of the operation on their property. Appellant and John A. Feick, who also represented the applicants, made comments and responded to questions related thereto.
 {¶ 8} At the end of the hearing, board member Meyer specified that the sole reason for the hearing was to determine whether a tire retreading operation should be classified as a commercial use or as a manufacturing enterprise: "All we're here for is to hear the variance on whether retreading of a tire is in manufactured zoning or C-2. Whether it qualifies for C-2"; and "So, everyone here is aware, what we're hearing the variance is just for the retreading whether we feel it belongs in C-2 or it is a manufactured, belongs in another zoning." Board member Pooch stated that he was basing his decision to deny the permit wholly on the opinion that tire retreading does not fit in a C-2 commercial-zoned property, but rather belongs in industrial: "It takes a process to basically remanufacture a tire, I don't think it's a simple tire repair, I think there's a process involved in it, there's a vulcanization, pressurizing, so on that comment, I'm going to make a motion to deny this Conditional Use entirely on those basis." [Grammar and capitalization sic.] On Meyer's motion, the board denied the application. The applicants were notified of the denial on or about June 24, 2000.
 {¶ 9} Appellant filed an appeal from that decision to the Erie County Court of Common Pleas on July 19, 2000. On April 2, 2004, the court of common pleas issued a decision denying the appeal. From that decision, appellant filed the instant appeal and asserts the following assignments of error:
{¶ 10} "I. The trial court abused its discretion by affirming themargaretta township zoning board's decision when the decision was notsupported by the requisite preponderance of reliable, probative andsubstantial evidence in the record.
 {¶ 11} "II. Based upon the denial of a fair opportunity to presentevidence and the trial court's failure to consider the entire record,additional evidence must be allowed into the record in accordance withO.R.C. 2506.03(2)."
 {¶ 12} We begin by examining the merits of appellant's second assignment of error, wherein appellant claims that additional evidence must be allowed into the record pursuant to R.C. 2506.03[(A)](2).
 {¶ 13} As set forth at R.C. Chapter 2506, appeal of a final decision of an administrative body is made to the common pleas court, and appeal of the judgment of the common pleas court is made to the court of appeals. The common pleas court, in its review of the administrative decision, considers the "`whole' record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. City ofYoungstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147.
 {¶ 14} By contrast, the standard of review to be used by appellate courts is "more limited in scope." Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34. "[R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4.
 {¶ 15} "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain CitySchool Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261.
 {¶ 16} It is within the foregoing framework that we will examine appellant's assignment of error.
 {¶ 17} Appellant argues that he was not given a fair opportunity to present evidence related to the issue of "whether the proposed use was manufacturing or a service and repair function." There is no question in this case but that prior to the hearing appellant and the applicants were unaware that there was any issue concerning the classification of the proposed use as an automobile service station; in fact, the information they had been given by the zoning inspector led them to believe that the matter had already been resolved.
 {¶ 18} While the case was on appeal to the court of common pleas, appellant filed an affidavit pursuant to R.C. 2506.03, wherein he stated that because he did not receive notice that the classification of the proposed operation would be an issue before the Board, he was not prepared at the time of the hearing "to offer evidence to refute testimony, opinions or evidence submitted to support a contention that [his] business was manufacturing." Appellant attached to this affidavit a letter from the Ohio Bureau of Workers' Compensation that indicated that tire retreading is more analogous to the operation of a tire dealer than a tire manufacturer.
 {¶ 19} R.C. 2506.03(A) relevantly provides that in hearing an appeal of an administrative decision,
 {¶ 20} "[T]he court shall be confined to the transcript * * * unless it appears, on the face of the transcript or by affidavit filed by appellant, that one of the following applies:
 {¶ 21} "* * *
 {¶ 22} "(2) The appellant was not permitted to appear and be heard in person, or by his attorney, in opposition to the final order, adjudication, or decision appealed from, and to do any of the following:
 {¶ 23} "* * *
 {¶ 24} "(d) Offer evidence to refute evidence and testimony offered in opposition to his position, arguments, and contentions;
 {¶ 25} "* * *
 {¶ 26} "If any circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to such party."
 {¶ 27} In this case, it is clear that as a direct result of information provided to appellant by the zoning inspector, appellant and the applicants did not know — and could not reasonably have anticipated — that classification of the retreading business would be a subject of debate at the application hearing. Without notice that classification of the business was even at issue, they were effectively prevented from presenting evidence as to the sole issue upon which the board's decision was based.
 {¶ 28} The trial court, in its April 2, 2004 order, erroneously stated that appellant's affidavit "does not allege one of the criteria found in R.C. 2506.03(A) with the exception of R.C. 2506.03(A)(2)(c) [dealing with cross-examination of witnesses] which has already been addressed." To the contrary, examination of the affidavit testimony wherein appellant states that because of the eleventh-hour disclosure concerning the classification of the business he was unable to offer evidence in support of his position is clearly evocative of the criterion set forth at R.C. 2506(A)(2)(d). In addition to making the point that appellant was precluded from offering relevant testimony, the affidavit uses language nearly identical to that found in the statute.
 {¶ 29} The trial court, following its apparent misreading of appellant's affidavit, summarily rejected the affidavit and its attachments and denied appellant's request for the submission of additional evidence.
 {¶ 30} Review of the lower court's order makes clear that the court did not give proper consideration to appellant's R.C. 2506.03 affidavit. "[T]he long standing precedent in this state is that `where an appellant files an affidavit stating that there were deficiencies in the hearing on which the administrative decision is based, the court of common pleasmust consider this and afford the appellant a hearing to correct the deficiencies outlined in R.C. 2506.03.'" Bay v. Gallia-Vinton Educ.Serv. Ctr., 4th Dist. No. 02CA9, 2003-Ohio-7335 (emphasis in original) (citations omitted). Because the court did not even consider the portion of appellant's affidavit calling forth deficiencies in the evidence pursuant to R.C. 2506.03(A)(2)(d), we hold that the court erred as a matter of law.
 {¶ 31} It is noted that the trial court, in addition to finding procedural grounds on which to deny appellant's request to admit additional evidence, specifically found that arguments and evidence going to classification of the business were irrelevant to a determination of the appropriateness of the board's decision. In making this statement, and in formulating its analysis, the trial court focused on the narrow question of whether or not tire retreading is a permitted conditional use in a C-2 commercial district. Ultimately, the court concluded that the board "rejected Appellant's application on the basis that tire retreading was not a permitted conditional use in a C-2 Commercial District."
 {¶ 32} As indicated above, however, the board's analysis was not limited to the issue of whether tire retreading was a permitted conditional use in a C-2 commercial district. Rather, as was repeatedly stated by the board, the question before it was whether tire retreading was properly classified as a commercial use or as an industrial or manufacturing use. A decision classifying the business one way or the other was determinative of the entire matter.
 {¶ 33} A court is "obligated to conduct an evidentiary hearing * * * `where the transcript of the administrative proceeding is incomplete, either because it did not contain all of the evidence which actually was presented or because the appealing party's right to be heard and present evidence was infringed in some manner.'" Stein v. Geauga Cnty. Bd., 11th Dist. No. 2002-G-2439, 2003-Ohio-2104, at ¶ 23 (Christley, J., concurring, quoting Schoell v. Sheboy (1973), 34 Ohio App.2d 168, 172.) Because appellant's right to be heard was clearly infringed in this case, a hearing must be held in the common pleas court. At the hearing, the court is required to hear such additional evidence as may be introduced by either party. Id. at ¶ 14. "The court of common pleas' authority to hear additional evidence under R.C. 2506.03 resembles a de novo hearing, requiring the court of common pleas to weigh the evidence presented to determine whether there is a preponderance of reliable, probative, and substantial evidence supporting the agency's decision." Id. (Citation omitted.)
 {¶ 34} In sum, because appellant filed an affidavit competent under R.C. 2506.03, and because the record was deficient to the extent that appellant's right to be heard and to present evidence was infringed, upon remand the court should conduct a hearing and allow each party to introduce additional evidence that pertains to those deficiencies.
 {¶ 35} Because our ruling on appellant's second assignment of error is dispositive of the appeal, we find appellant's first assignment of error moot. See App.R. 12(A)(1)(c).
 {¶ 36} For the foregoing reasons, judgment is reversed and the cause is remanded to the Erie County Court of Common Pleas for further proceedings, consistent with this decision and judgment entry. Pursuant to App.R. 24, costs are assessed to appellee.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J. and Parish, J. concur.