KISIL, APPELLANT, *v.* CITY OF SANDUSKY ET AL., APPELLEES.

[Cite as Kisil *v.* Sandusky (1984), 12 Ohio St. 3d 30.]

(No. 83-1449—Decided July 3, 1984.)

*Murray & Murray Co., L.P.A.,* and *Mr. William H. Bartle,* for appellant.
*Smith & Leher Co., L.P.A.,* and *Mr. William H. Smith, Jr.,* for appellees.

CLIFFORD F. BROWN, J.

I

The parcel of land located at 508 Huron Avenue, Sandusky, Ohio, is a single-family residence which was erected before the 1956 enactment of the Sandusky city zoning ordinances. The area in which the property is situated was designated R2F by the 1956 ordinance. R2F zoning allows two-family dwellings and single-family dwellings. When plaintiff-appellant purchased the property in question in 1981, he did so for investment purposes with the idea of renting the residence. Appellant testified before the commission and board that he desired to convert the residence from a single-family to a two-family residence so as to make the rental property profitable.

The conversion of appellant's property to a duplex would not need the approval of the commission but for the fact that the lot on which the residence is situated is below the minimum area and yard requirements contained in the city zoning provisions.[1] Appellant, therefore, sought a variance to allow

---

[1] "§ 151.20 AREA, YARD, AND HEIGHT REGULATIONS.

"Land and buildings shall be used in accordance with the lot area regulations; and buildings shall be designed, erected, altered, moved, or maintained in accordance with the yard and building height regulations set forth in the following sections.

"(A)  The area of a zoning lot shall be not less than the area in square feet required for each unit as set forth in schedule § 151.21 hereof, multiplied by the number of units in the building. In an RRB District, the minimum area per unit in the aforesaid schedule may include one dwelling unit with a retail store or service unit on the same lot.

"(B)  The width of a zoning lot shall be not less than the width at building line as set forth in § 151.21 hereof, for the type of dwelling or other building permitted in the district in which the lot is located. Each zoning lot shall abut upon a street, and on curved streets, the width of a lot on the front line may be less but shall be at least 60% of the width required at the building line.

"(C)  The front yard of a zoning lot shall be not less than the front depth set forth in § 151.21 hereof, for the type of dwelling or the building permitted in the District in which it is located, where less than 50% of the street frontage between 2 successive intersecting streets was built up prior to the effective date of the zoning code; except for the front yard setbacks on main streets and other locations that may be shown on the zone map.

"(D)(1)  Two side yards shall be provided for every dwelling and for the stores and services permitted on the zoning lot in an RRF District. The width of either side yard of a lot shall be not less than the width for a single yard, as set forth in § 151.21 hereof, and the width of both side yards of a lot, or the width of 2 adjoining side yards on adjoining zoning lots shall be not less than the total width as set forth in § 151.21 for the district in which it is located; except that any side

the conversion of the residence. Such a variance is not a pure use variance. The variance sought by appellant is merely an area variance. It has been noted by other jurisdictions that the standard for granting a variance which relates to area requirements only should be a lesser standard than that applied to use variances.

The New York Court of Appeals when faced with a case quite similar to the present action explained, "[a]n applicant for an area variance need not establish special [unnecessary] hardship. It is sufficient to show practical difficulties * * *." *Matter of Hoffman* v. *Harris* (1966), 17 N.Y. 2d 138, 144, 269 N.Y. Supp. 2d 119, 123, 216 N.E. 2d 326, 329.[2] The court went on to cite the

yard containing a driveway shall be not less than 10 feet wide, and the other side yard of the lot shall be not less than the minimum yard width designated.

"(2) Supplementary regulations for side yards are: insufficient side yards, § 151.30 hereof; corner lots, § 151.31 hereof; unit development, § 151.32 hereof; and multifamily development, § 151.33 hereof.

"(E) The rear yard of a zoning lot for main buildings shall be not less than 30% of the depth of lot or the depth set forth in § 151.21 hereof, for the district in which it is located, whichever is the lesser. The lot area occupied by a detached accessory building shall not exceed 30% of the area of the rear yard, and the accessory building shall be located in accord with yard regulations, as set forth in § 151.36 hereof.

"(F) The height of a main building permitted on a zoning lot shall not exceed the number of stories or height in feet, whichever is the lesser, as set forth in § 151.21 hereof, for the district in which it is located, except as modified in § 151.39 hereof. The height of permitted accessory buildings and store or service shops shall not exceed 1 story or 15 feet in height. ('60 Code, § 107.15) Penalty, see § 150.99"

"§ 151.21  SCHEDULE OF AREA, YARD, AND HEIGHT REQUIREMENTS.

| District | Dwelling or building type | Minimum lot size | | Front depth | Minimum yard dimensions | | Rear depth | Max. Height Main Building | |
| | | Area per unit (sq. ft.) | Width at building line (ft.) | (ft.) | Side Width | | 30% or (ft.) | | |
| | | | | | Single (ft.) | Total (ft.) | | Story | Ft. |
| RS | 1 Fam. Dw. | 20,000 | 100 | 45 | 10 | 25 | 50 | 2 | 30 |
| R1-75 | 1 Fam. Dw. | 12,000 | 75 | 35 | 5 | 15 | 50 | 2 | 30 |
| R1-60 | 1 Fam. Dw. | 7,500 | 60 | 30 | 4 | 12 | 40 | 2 | 30 |
| R1-50 | 1 Fam. Dw. | 6,000 | 50 | 30 | 3 | 11 | 40 | 2 | 30 |
| R1-40 | 1 Fam. Dw. | 4,800 | 40 | 25 | 3 | 10 | 40 | 2 | 30 |
| R2F | 1 Fam. Dw. | 4,300 | 33 | 25 | 3 | 10 | 40 | 2 | 30 |
| | 2 Fam. Dw. | 2,750 | 40 | 25 | 3 | 10 | 40 | 2 | 30" |

[2] See, also, *Clune* v. *Walker* (1958), 10 Misc. 2d 858, 170 N.Y. Supp. 2d 604; *Gruen* v. *Simpson* (1956), 153 N.Y. Supp. 2d 287; and *Elliott* v. *Galvin* (1973), 33 N.Y. 2d 594, 347 N.Y. Supp. 2d 457.

reason for such distinctions between use and area variances as being, "* * * [w]hen the variance is one of area only, there is no change in the character of the zoned district and the neighborhood considerations are not as strong as in a use variance." *Id.*

In this case the grant of a variance to appellant will not alter the character of the surrounding neighborhood. The record reveals that a vast majority of the surrounding neighborhood is at the present time being used as two-family residential rental property. In fact the lot directly north of appellant's property was granted a variance by the commission to be used as a multifamily residence, which is not only an area but a use variance. The residence granted this variance is on a lot which is smaller in area than the appellant's lot.

This court has recently addressed the issue of variances in *Consolidated Mgmt., Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238. In that case the plaintiff sought a variance to convert his commercial property to a use which was outside the use permitted by the zoning ordinance. This court held that the requirement of an unnecessary hardship suffered by a landowner seeking a variance could not be met when the landowner purchased the property with knowledge of the zoning restrictions. *Id.* at paragraph one of the syllabus.

The instant case is a different situation. While appellant had prior knowledge of the commission's denial of a variance requested by the previous landowner, the decision entered by the commission at that time was never appealed. The granting of a variance to the appellant should not be judged on the traditional showing of an "unnecessary hardship" but on the lesser standard of a "practical difficulty." Because the standard which is used to guide the decision of the reviewing authorities is different in this action, the value of the precedent enunciated in *Consolidated Mgmt., Inc.* is minimal.

We are further persuaded that the common pleas court was correct when it found that the denial of the variance by the commission and board was unreasonable and arbitrary. An examination of the record reveals that the neighborhood in which appellant's parcel of land is situated contains many duplex residences.[3] A significant number of these residences are on lots insufficient in size, according to the zoning ordinances. Even more persuasive is the fact that the lot north of appellant's lot was recently granted a variance for a multifamily residence. The allowance of other duplexes on lots insufficient in size and the granting of a multifamily variance to a neighboring landowner, while denying appellant's request for a variance, is unreasonable and arbitrary enforcement of the zoning ordinances.

---

[3] Appellant requested an appraisal of the property located at 508 Huron Avenue from the independent professional appraisal service of Reynolds and Associates. In its report the firm found eighty percent of the neighborhood in which the residence is located consists of two- to four-family residences.

## II

When a zoning ordinance is enforced in an unreasonable and arbitrary manner, as in this case, it is the responsibility of the trial court, reviewing the action pursuant to R.C. Chapter 2506, to reverse the findings of the board of zoning appeals. The scope of review by the trial court is set forth in R.C. 2506.04, which requires the court to examine the "substantial, reliable and probative evidence on the whole record." This court has noted in *Cincinnati Bell* v. *Glendale* (1975), 42 Ohio St. 2d 368, 370 [71 O.O.2d 331], that, "* * * [a]lthough a hearing before the Court of Common Pleas pursuant to R.C. 2506.01 is not *de novo,* it often in fact resembles a *de novo* proceeding. R.C. 2506.03 specifically provides that an appeal pursuant to R.C. 2506.01, 'shall proceed as in the trial of a civil action,' and makes liberal provision for the introduction of new or additional evidence."

A court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision. This court pointed out in *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 207 [12 O.O.3d 198], "[t]he key term is 'preponderance.' " The court went on further to explore the scope of review by the appellate courts and found, "[i]n determining whether the standard of review prescribed by R.C. 2506.04 was correctly applied by the Court of Common Pleas, both this court [the Supreme Court] and the Court of Appeals have a limited function." *Id.* In an R.C. Chapter 2506 administrative appeal of a decision of the board of zoning appeals to the common pleas court, the court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.[4]

This is consistent with the determination in the *per curiam* opinion in

---

[4] Support for this legal proposition is the relevant language of R.C. 2506.04, as follows:

"The court may find that the order, adjudication or decision is * * * unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm [or] reverse * * * the * * * decision * * *. The judgment of the court may be appealed by any party on *questions of law* pursuant to sections 2505.01 to 2505.45, inclusive, of the Revised Code." (Emphasis added.)

This statute gives the common pleas court power to weigh the evidence, and to reach a decision reversing the board where the board's decision is not supported by "the preponderance of substantial, reliable and probative evidence." This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court. Within the ambit of "questions of law" for appellate court review would be abuse of discretion by the common pleas court.

*Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108 [17 O.O.3d 65], which construed analogous R.C. 119.12 governing administrative appeals in R.C. Chapter 119. There, this court stated at 110-112:

"In the case of *Hale* v. *Bd. of Edn.* (1968), 13 Ohio St. 2d 92 [42 O.O.2d 286], discussing the scope of review of the Common Pleas Court under R.C. 3319.16 (teacher termination), Chief Justice Taft stated, at pages 96-97, that:

" 'The legislative purpose, generally to authorize a Common Pleas Court to weigh the evidence on an appeal from an administrative agency, is indicated by other statutes, as well as by our decisions construing them. Thus, after the holding of this court in *Farrand* v. *State Medical Board* (1949), 151 Ohio St. 222 [39 O.O.41], 85 N.E. 2d 113, the General Assembly amended what is now Section 119.12, Revised Code, to provide for such authority. *Andrews* v. *Board of Liquor Control, supra* (164 Ohio St. 275 [58 O.O. 51], paragraph one of the syllabus). Furthermore, in adopting Section 2506.04 Revised Code, in 1957, the General Assembly even used the words "preponderance of * * * evidence" to emphasive [*sic*] this purpose.'

"In *Andrews,* this court acknowledged that determining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court.

"In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. * * * However, the findings of the agency are by no means conclusive.

" '* * *

"Applying these general principles to the instant cause, we believe that the Court of Common Pleas utilized the appropriate scope of review in reversing the order of the commission. * * * We believe that the Court of Common Pleas was acting in accordance with its statutory power, under R.C. 119.12 in electing not to give credence to the testimony of Conrad, and in relying upon the testimony of the police officer.

"The Court of Appeals herein held that '[i]t is well established that a common pleas court does not sit as the trier of facts in a case such as this. Its authority is solely that of a reviewing court * * *.' The appellate court then reversed the lower court, finding that there was reliable[,] probative and substantial evidence before the commission. We believe that the Court of Appeals misperceived the scope of review of the Common Pleas Court in such a proceeding pursuant to the Administrative Procedure Act."

Since the standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use, an application for an area variance need not establish unnecessary hardship. It is sufficient the application show practical difficulties. Having examined the record, this court concludes that the court of common

pleas did not abuse its discretion in reaching its judgment. The judgment of the court of appeals is therefore reversed.

*Judgment reversed.*

W. BROWN, SWEENEY and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., LOCHER and HOLMES, JJ., dissent.

LOCHER, J., dissenting. The first paragraph of the syllabus in *Consolidated Mgmt., Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238, reads as follows:

"Generally, where a purchaser of commercial property acquires the premises with knowledge of certain zoning restrictions, he must accept the limitations on the usages of such property, and may not demand a variance based upon the claimed hardship due to such limitations."

In effect, the majority today finds a difference between commercial property and residential property for variance purposes. Appellant readily admits to having knowledge of the zoning restrictions applicable to his residential property when he purchased it in 1981 for investment purposes, yet is now permitted to ignore such restrictions. This is a *sub silentio* reversal of *Consolidated Mgmt., Inc.,* since there should be no difference in the present context between commercial and residential uses.

The majority misinterprets the holding in *Consolidated Mgmt., Inc.* as requiring some sort of a previous attempt to secure a variance before knowledge is imputed. This was not the holding of that case. No distinction was made as to how the knowledge is gained. Rather, a landowner who buys with knowledge, *however gained,* "* * * has created his own hardship and generally cannot thereafter apply for a zoning variance based on such hardship." *Id.* at 242.

The majority makes much of the fact that a neighboring landowner to appellant was granted a multifamily variance from a previous commercial use. This commercial use, however, was a *nonconforming* use that was eliminated by the variance. Hence, the present use of that property is more restricted than its previous use, and is now more closely tailored to the zoning plan than before. Thus, the neighborhood was *upgraded* by the granting of that variance. This is far different from what has occurred in the case herein: appellant is permitted to vary his previously conforming use into a downgrading use outside the bounds of the zoning code.

The real problem with this court's holding today, though, is the abrogation of the home rule power of appellee city to enforce its zoning code. The property in question is *less than one-half* of the required two-family area dimensions. There is no question here of any arbitrariness on the part of appellee. Zoning has long been an established power of the municipality, with the burden on the claimant to show that a zoning board's refusal to grant a variance is unreasonable, arbitrary, or capricious. *Consolidated Mgmt., Inc.,*

*supra,* at 240; *C. Miller Chevrolet* v. *Willoughby Hills* (1974), 38 Ohio St. 2d 298 [67 O.O.2d 358]. The court of appeals was correct in citing the knowledge of appellant, the large size disparity, and the distinguishable circumstances of the neighboring parcel in holding for appellees.

For the foregoing reasons, I must therefore dissent.

CELEBREZZE, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.