WOLSTEIN et al., Appellants,

v.

CITY OF PEPPER PIKE CITY COUNCIL et al., Appellees.

[Cite as *Wolstein v. Pepper Pike City Council,* 156 Ohio App.3d 20, 2004-Ohio-361.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83308.

Decided Jan. 29, 2004.

**22**

Grendell & Simon Co. and Timothy J. Grendell, for appellants.

Walter & Haverfield and Christopher L. Gibbon, for appellees.

---

ANN DYKE, Judge.

{¶ 1} Bertram and Iris Wolstein appeal from the order of the trial court that affirmed the Pepper Pike City Council's denial of their request for variances to construct a wrought iron security fence on their property. Because we are unable to conclude that the trial court abused its discretion, we affirm.

{¶ 2} On September 24, 2002, the Wolsteins submitted to the city a written request for a variance from the requirements of the Codified Ordinances of the City of Pepper Pike 1468.03, "Fences in Front Yards," which permits decorative wooden split rail fences that are no higher than four feet. The Wolsteins explained that for security purposes, they wished to construct a six-foot high, wrought iron security fence across the front of their property. The Pepper Pike Planning and Zoning Commission heard the matter on October 8, 2002. At this time, the attorney for the Wolsteins explained that the proposed fence would extend across the front of their parcel then connect to chain link fencing in the

rear of the parcel. He further explained that the landowners experienced practical difficulty under the zoning code as applied because the wooden split rail fences authorized by the code do not offer any security protection. He asserted that the Wolsteins are high profile individuals who are concerned about personal safety and the security of their property. The vast frontage of the parcel prevent the landowners from maintaining an adequate perimeter of security.

{¶ 3} The matter was subsequently set for public hearing on December 2, 2002. At this time, the attorney for the Wolsteins explained that the nature of their philanthropic activities presents security issues for the Wolsteins. Security expert Ron Orlowski testified that a split rail fence would offer no security to the landowners and that "home invasion" will be the crime of the future.

{¶ 4} Commission members questioned Deputy Chief of Police Terry Pristas, who indicated that Pepper Pike has less than five robberies per year. The commission then denied the request, and the Wolsteins appealed the matter to the Pepper Pike City Council. At this meeting, the attorney for the Wolsteins noted that the city had made various safety-related expenditures following the September 11, 2001 terrorist attacks. He explained that the Wolsteins had similar safety concerns in light of their affiliations and donations and wished to provide security to their parcel. Ron Orlowski again testified that the split rail fence authorized by the Code offered no protection. He had assessed the property and recommended the security fence as a physical barrier to intrusion. Council questioned whether the Wolsteins would be adequately protected by having a security system inside their home, whether they traveled with armed guards, and whether Bertram Wolstein's place of employment has security measures. David Hart, a planning and development consultant, testified that the variance was substantial and that, from a zoning standpoint, he did not find practical difficulty issues. A neighboring landowner testified that the fence did not conform with the open character of the neighborhood.

{¶ 5} The Pepper Pike City Council subsequently denied the variance, determining that:

{¶ 6} "9. The six foot high wrought iron security fence would be a substantial variance which would substantially alter the character of the neighborhood.

{¶ 7} "10. The property owners did not present evidence of a need for the security fence different in kind than other residents of Pepper Pike.

{¶ 8} "11. The property owners' concern for security can be obviated through means other than a security fence, such as a security system at the house.'

{¶ 9} "12. The property owners can continue to make beneficial use of their property without the fence variances.

{¶ 10} "13. The Council finds that the spirit and intent behind the requirements regarding fences would be observed and substantial justice done by denying the variances.

{¶ 11} "14. The property owner has failed to demonstrate a practical difficulty sufficient to grant the variances requested."

{¶ 12} The property owners appealed to the court of common pleas, which determined that the denial was neither arbitrary nor capricious and was supported by the preponderance of substantial and probative evidence in the record. The property owners now appeal and assign two errors for our review.

{¶ 13} The Wolsteins' assignments of error are interrelated and state:

{¶ 14} "The trial court abused its discretion by upholding the city's denial of Wolsteins' wrought iron security fence variances when there is no credible evidence in the record supporting such denial."

{¶ 15} "The trial court's erroneous [affirmation] of the city's denial of Wolsteins' variance for a six foot, wrought iron decorative security fence constitutes reversible error because: (A) the city's denial is not supported by a preponderance of probative, reliable or substantial evidence of record; and (B) Wolstein is entitled to install the requested security fence because of the practical difficulty of maintaining security to the Wolsteins' home under the city's current, totally unsecure split rail fence requirement."

{¶ 16} Under the Codified Ordinances of the City of Pepper Pike 1468.03, "Fences in Front Yards," landowners are permitted to have decorative wooden split rail fences that are no higher than four feet. The fence proposed by Wolstein therefore required three separate variances: variance to permit a fence of greater height, variance for iron material, and variance for a security purpose.

{¶ 17} A board of zoning appeals is given wide latitude in deciding whether to grant or deny an area variance. See *Schomaeker v. First Natl. Bank* (1981), 66 Ohio St.2d 304, 309, 20 O.O.3d 285, 421 N.E.2d 530; *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 35, 12 OBR 26, 465 N.E.2d 848. Further, its decision to deny a variance is to be accorded a presumption of validity. See *Consol. Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 240, 6 OBR 307, 452 N.E.2d 1287; *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400, paragraph two of the syllabus.

{¶ 18} In order to satisfy the standard for an area variance, an applicant must demonstrate practical difficulties. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848, syllabus. See, also, *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692, syllabus. Accord *Cleveland Bd. of Zoning v. Shaker Med. Bldg. Partners* (May 16, 1991), Cuya-

hoga App. Nos. 58528 and 59535, 1991 WL 81483; *Calta v. Highland Hts.* (Mar. 19, 1998), Cuyahoga App. No. 72469, 1998 WL 122367.

█ {¶ 19} The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered "practical difficulties" in the use of his property include, but are not limited to (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692.

██ {¶ 20} With regard to the trial court's review of the decision, R.C. 2506.04 requires the trial court to determine whether it is supported by "substantial, reliable, and probative evidence on the whole record." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. If there is in the record a preponderance of reliable, probative, and substantial evidence to support the administrative decision, the trial court must affirm. See *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113; *In re Jones* (1990), 69 Ohio App.3d 114, 118, 590 N.E.2d 72. While the hearing before the trial court resembles a de novo proceeding, "a court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky.* Moreover, the trial court must presume that the board's determination is valid unless the party opposing the determination can demonstrate that the determination is invalid. *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 21, 580 N.E.2d 500.

██ {¶ 21} "An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Id.*; *Kisil v. Sandusky*, supra. Within the ambit of "questions of law" is whether the common pleas court abused its discretion.

*Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 735 N.E.2d 433. Abuse of discretion connotes more than an error of law or of judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 22} The trial court in the present case determined that the city's decision was supported by a preponderance of reliable, probative, and substantial evidence. We cannot say, as a matter of law, that the trial court's decision was contrary to the preponderance of the evidence. Through questioning, the city determined that practical difficulty had not been shown. The city determined that a six-foot high wrought iron security fence required three variances, and the record suggests that it was out of character with the rest of the neighborhood. In addition, the city specifically concluded that the evidence did not demonstrate that "[t]he property owners' concern for security can be obviated through means other than a security fence, such as a security system at the house" and could "continue to make beneficial use of their property without the fence variances." The trial court did not abuse its discretion. Accord *C & T Ornamental Iron v. Boardman Twp. Zoning Bd. of Appeals* (Feb. 13, 1979), Mahoning App. No. 78 CA 80.

{¶ 23} The assignments of error are overruled.

{¶ 24} The judgment is affirmed.

Judgment affirmed.

SEAN C. GALLAGHER and KENNETH A. ROCCO, JJ., concur.