[Cite as *Denk v. Lakewood*, 2014-Ohio-3725.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100812 and 100828**

# EDWARD DENK, ET AL.

PLAINTIFFS-APPELLEES

vs.

# CITY OF LAKEWOOD, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
NO. 100812: AFFIRMED;
NO. 100828: DISMISSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-797494

**BEFORE:** Kilbane, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEYS FOR APPELLANTS**

Amanda A. Barreto
Steven M. Ott
Ott & Associates Co. L.P.A.
1300 E. Ninth Street
Suite 1520
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

**For Edward Denk, et al.**

Benjamin J. Ockner
Berns, Ockner & Greenberger, L.L.C.
3733 Park East Drive
Suite 200
Beachwood, Ohio 44122

**For City of Lakewood**

Kevin M. Butler
Law Director
City of Lakewood
Jennifer L. Mladek
Assistant Law Director
12650 Detroit Avenue
Lakewood, Ohio 44107

MARY EILEEN KILBANE, P.J.:

**{¶1}** This consolidated appeal arises from the trial court's judgment reversing the decision of the city of Lakewood Board of Zoning Appeals ("BZA"), which granted defendants-appellants, George and Phyllis Fannin's (collectively referred to as the "Fannins") request for a permit to build three fences. In Appeal No. 100812, the Fannins appeal the trial court's judgment that the fences violate the city's code. In Appeal No. 100828, defendant-appellant, the city of Lakewood (the "City"), also appeals the trial court's judgment. For the reasons set forth below, we dismiss the City's appeal as untimely and affirm the trial court's judgment reversing the decision of the BZA, concluding the permit for the fences is null and void.

**{¶2}** Plaintiffs-appellees, Edward and Sue Denk (collectively referred to as the "Denks") and Barbara Parker ("Parker") (collectively referred to as the "plaintiffs"), are the Fannins' neighbors on a cul-de-sac at the northern end of Kenneth Drive in Lakewood, Ohio. Extending from Kenneth Drive is a private right-of-way know as Kenneth Lane. The Fannins' property is located on Kenneth Lane. However, there are easements that allow other residents in the area to use Kenneth Lane as a means of ingress and egress. The lots owned by the Fannins and the Denks border and overlook Lake Erie.

**{¶3}** In August 2012, the Fannins obtained a permit to install three separate fences. Their application included a rough sketch indicating that the Fannins wanted to erect a fence four to six feet high that extended from the rear of their property directly

south to a point just short of the pavement of Kenneth Lane along the Denks' eastern property line; a fence four feet high that extended along the north side of Kenneth Lane in a southwest direction along the Denks' southeast property line; and a fence six feet high that extended along the south side of Kenneth Lane, across the street from their home, along the north side of Parker's property line. At appellate oral argument, the parties indicated that the third fence, which was to be built along the Denks' southeast property line, will not be installed because of a gas line easement.

{¶4} The plaintiffs appealed the issuance of the permit, contending that the fences were in violation of the City's setback provision. Under Lakewood Codified Ordinance ("L.C.O.") 1133.02, fences are prohibited from being built in front of the building line, which is established by the City's Building Line Map ("BLM"). For Kenneth Drive, the BLM establishes a setback of 50 feet. However, the BLM does not establish a setback for Kenneth Lane. The BZA held hearings on the permit in October and November 2012. At the conclusion of the November hearing, the BZA denied the appeal, concluding that the Fannins' property was not subject to a setback because the BLM did not state a building line for Kenneth Lane. Plaintiffs then appealed this decision to the Cuyahoga County Court of Common Pleas. The plaintiffs argued that the BZA erred in upholding the permit because it allows for the unlawful erection of fences by the Fannins beyond the minimum front yard building setback prescribed by the City's zoning regulations. The plaintiffs maintained that the Fannins were required by City code to maintain a minimum front yard in which all structures, including fences, were

prohibited, and that the fences approved by the permit violated that requirement. The Fannins and the City (collectively referred to as "defendants") argued that the existence and required dimensions of a "front yard" were irrelevant because the location of a fence on a lot is related only to the location of the building line on that lot. They further argued that since there is no building line set for Kenneth Lane, the owners of the Kenneth Lane lots are free to place fences as close to the right-of-way as they may desire. The trial court found the plaintiffs' arguments more persuasive.

{¶5} In a seven-page opinion, the trial court reversed the BZA's decision, finding that it was "an unreasonable interpretation" of the City's code. The court noted that the position advocated by the defendants would hypothetically allow the Fannins to build a gazebo in the middle of their front yard, while no other property owners in the City could do the same. The court noted that the Fannins' lot was a "quasi-corner lot" in that it abuts two rights-of-way: Kenneth Drive and Kenneth Lane. The court determined that the Fannins' lot should be oriented to Kenneth Lane. The court noted that the City's BLM does not indicate a building line for Kenneth Lane. In applying L.C.O. 1121.07, the court determined that the building line for the Fannins' lot should be "determined by the average front yard depths of the properties that also front Kenneth Lane." The court then found that the fences authorized by the permit impermissibly extended beyond the building line. The court concluded that all three fences were in violation of the City's code, and declared that the permit was "null and void" under L.C.O. 1171.05(a).

**{¶6}** The City and the Fannins both appeal from this order, raising the following single assignment of error for review.

Assignment of Error

The trial court erred when it substituted its judgment for that of the administrative agency, the Board of Zoning Appeals.

**{¶7}** Before we address the merits of the sole assignment of error, we must first address the timeliness of defendants' appeals. The trial court's judgment reversing the BZA's decision was journalized on November 22, 2013. App.R. 4(A) requires that a notice of appeal be filed within 30 days of the date of the final judgment. For the appeal to be timely in the instant case, both appellants had to file their notice of appeal by December 23, 2013.

**{¶8}** In Appeal No. 100812, the Fannins appealed from the trial court's judgment on December 23, 2013. The Fannins filed their notice of appeal electronically. Their notice of appeal, however, was rejected by the clerk of courts on December 26, 2013. Subsequently, the Fannins filed a paper copy of their notice of appeal on December 26, 2013. The plaintiffs filed a motion to dismiss the Fannins' appeal on December 30, 2013, arguing that the appeal was untimely. This court denied the motion under Loc.App.R. 13.1(B)(2), which allows the Fannins a corrective filing within one business day of the notice of rejection to retain the original date and time of the filing. Therefore, the Fannins' appeal is timely.

**{¶9}** In Appeal No. 100828, the City appealed from the trial court's judgment on December 31, 2013. As stated above, for the City's appeal to be timely, the City had to

file its notice of appeal by December 23, 2013. It is well established that an appellate court lacks jurisdiction over any appeal that is not timely filed. *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60, 531 N.E.2d 713 (1988). Since the City's appeal is untimely, we lack jurisdiction to review any assigned errors in Appeal No. 100828. However, the merits of the City's appeal will still be addressed by virtue of the Fannins' appeal because the appellants filed a joint brief with a single assignment of error in both appeals.

<u>Administrative Appeals — Standard of Review</u>

{¶10} In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 2000-Ohio-493, 735 N.E.2d 433, the Ohio Supreme Court discussed the standard of review to be applied by common pleas courts and appellate courts in R.C. Chapter 2506 administrative appeals. The *Henley* court stated:

> The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St. 3d 608, 612, 693 N.E.2d 219, 223, citing *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St. 2d 202, 206-207, 389 N.E.2d 1113, 1116-1117.

> The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more *limited* in scope." (Emphasis added.) * * * "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than

the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 261, 533 N.E.2d 264, 267.

*Id.* at 147.

**{¶11}** Therefore, R.C. 2506.04 requires that this court "'affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.'" *Wolstein v. Pepper Pike City Council*, 156 Ohio App.3d 20, 2004-Ohio-361, 804 N.E.2d 75, ¶ 21 (8th Dist.), quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). "[T]he ambit of 'questions of law' includes whether the common pleas court abused its discretion." *Wolstein* at ¶ 21, citing *Henley*. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶12}** In the sole assignment of error, the Fannins argue that the trial court was required to defer to the BZA's interpretation of the City's code, as the BZA's decision "was supported by a preponderance of reliable, probative, and substantive evidence." The Fannins further argue that the absence from the BLM of a specific building setback distance for lots on Kenneth Lane means that houses and other structures, including fences, can be placed as close to the right-of-way on those lots as their owners desire.

{¶13} While it is well settled that in administrative appeals, the trial court must give due deference to the administrative resolution of evidentiary conflicts, the agency's findings "are by no means conclusive." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980). The Fannins maintain that the trial court should have given deference to the BZA and not inserted its own perception of how the City's code should be construed because the BZA's decision to uphold the permit "was supported by a preponderance of reliable, probative, and substantive evidence."

{¶14} Here, other than voting to deny the plaintiffs' appeal, the BZA made no "findings," nor were any "evidentiary conflicts" presented to or resolved by the BZA. Rather, the "findings" defendants rely on consist primarily of arguments by the City's law director who did not speak on behalf of the BZA during the proceedings. As a result, there are no findings to which the trial court could have deferred.

{¶15} Moreover, the trial court was not required to determine that the BZA's decision unsupported by the preponderance of substantial, reliable, and probative evidence as the Fannins contend. Under R.C. 2506.04, the trial court was required to determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Henley*, 90 Ohio St.3d 147, 2000-Ohio-493, 735 N.E.2d 433. In the instant case, the trial court found that the BZA's Decision "was an unreasonable interpretation of the City's ordinances." Therefore, the outcome of R.C. Chapter 2506

appeals need not be based solely on the preponderance of substantial, reliable, and probative evidence.

{¶16} The Fannins further argue that BZA's decision was proper because the BLM does not state a specific building setback distance for lots on Kenneth Lane. In its thorough opinion, the trial court found that the BZA's decision was an unreasonable interpretation of the City's ordinances, and determined that the proper building line is the average of the existing front yard depths on the abutting properties. We agree.

{¶17} In interpreting these ordinances, we follow standard rules of statutory construction. "[I]f the language is unambiguous, we must apply the clear meaning of the words used." *Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14, citing *Roxane Laboratories, Inc. v. Tracy*, 75 Ohio St.3d 125, 127, 1996-Ohio-257, 661 N.E.2d 1011. Under R.C. 1.42, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."

{¶18} This court has held that "'[although] courts of appeals have a limited scope of review on R.C. [Chapter] 2506 appeals, interpretation of a city's ordinance presents a question of law that must be reviewed de novo.'" *Jackson v. Cleveland Dept. of Bldg. & Hous.*, 2012-Ohio-3688, 976 N.E.2d 254, ¶ 8 (8th Dist.), quoting *Moulagiannis v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 84922, 2005-Ohio-2180, ¶ 10.

{¶19} The issue in this matter is whether the City's code allows for the placement of the fences approved by the BZA. Plaintiffs maintain that the code unambiguously

prohibits the placement of fences where the defendants proposed to build. On the other hand, the Fannins maintain that the code allows them to place fences wherever they chose so long as the fences are at least 50 feet away from the Kenneth Drive right-of-way. Neither the parties, nor the trial court found the City's code ambiguous on this issue. Therefore, we apply the common meaning of the words used.

{¶20} L.C.O. 1153.02(a) provides that "[n]o fence * * * shall be erected, placed, or extended in front of the building line[.]" L.C.O. 1103.02(r) defines a building line as "a line parallel to a public or private right-of-way measured from same the distance in feet as shown on the *Building Line Map.*" (Emphasis sic.) The BLM is a map promulgated by Lakewood City Council that depicts the streets of the City with numbers attached to each street. These numbers establish what the building line is, measured in feet from the right-of-way. Here, the BZA determined that the building line for the Fannins' property is a line 50 feet away from and parallel to Kenneth Drive, which has a building line setback of 50 feet. The BZA came to this conclusion because there is no BLM for Kenneth Lane and the Fannins' property abuts Kenneth Drive.

{¶21} The trial court found that such a building line would produce unreasonable results because the building line performs other functions within the City's code, besides the placement of fences. The trial court noted that the building line is used to establish the front yard of a property. L.C.O. 1103.02(rrr) defines a front yard as the "unoccupied area between the public or private right-of-way and the building line." Based on the BZA's interpretation, the front yard of the Fannins' property would include a 50-foot

portion of pavement on Kenneth Lane extending from Kenneth Drive.  The BZA's decision also would allow the placement of structures anywhere behind the building line.[1]  The trial court concluded that the BZA's decision as to where the building line is located for the Fannins' property would lead to unreasonable results.  Therefore, the trial court properly concluded that the BZA's decision was unreasonable.

{¶22} The trial court then determined that Fannins' building line could be established under L.C.O. 1121.07, which governs the front yard depths in the single family district where the Fannins' home is located.  L.C.O. 1121.07 provides that the front yard depth is "[a]s established on the [BLM] or the average of the existing front yard depths on the abutting properties as measured from the front foundation wall."  Under L.C.O. 1121.07, each lot in the Fannins' district must maintain an unoccupied area that extends out and away from the right-of-way, towards the lot's rear property line up to the building line, in which no structures, including fences, can be placed or extended.  This is consistent with L.C.O. 1103.02(rrr), which defines a front yard as the "unoccupied area between the public or private right-of-way and the building line."

{¶23} Since there is no building setback number on the BLM for Kenneth Lane, the trial court determined, and we agree, that under L.C.O. 1121.07, the building line for the Fannins' front yard is the average of the existing front yard depths on the abutting properties.  L.C.O. 1153.02(a) provides that "[n]o fence * * * shall be erected, placed, or

---

[1] L.C.O. 1103.02(jjj) defines structures to include "barriers, * * * buildings, * * * fences, * * * pools, sheds, * * * tanks, * * * and walls[.]"

extended in front of the building line[.]" While the trial court acknowledged that it did not have sufficient evidence to determine the building line with precision, the trial court concluded that the Fannins' three fences clearly extend in front of their building line. As a result, the trial court properly concluded that the fences are in violation of the City's code and the permit should not have been approved. The trial court then declared that the permit is null and void under L.C.O. 1171.05(a), which provides that: "[n]o department, [or] board * * * of the City * * * shall issue [a permit] if such * * * use would be in conflict with the provisions of this Code, and any permit so issued, shall be null and void[.]"

{¶24} Based on the foregoing, we find that the trial court's decision was supported by a preponderance of substantial, reliable, and probative evidence. We further find that the trial court did not abuse its discretion when it weighed the evidence and determined that the BZA's decision to approve the Fannins' permit to build three fences was unreasonable. Therefore, the trial court properly reversed the BZA's decision to approve the Fannins' permit to build three fences.

{¶25} Accordingly, the sole assignment of error is overruled.

{¶26} Therefore, the City's appeal is dismissed as untimely, and the trial court's judgment reversing the decision of the BZA is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR