[Cite as *Barry v. Bay Village Bd. of Zoning Appeals*, 2017-Ohio-7244.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104999**

# GENE BARRY

PLAINTIFF-APPELLANT

vs.

# CITY OF BAY VILLAGE, OHIO BOARD OF ZONING APPEALS, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-855176

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 17, 2017

**ATTORNEY FOR APPELLANT**

Dominic J. Vannucci
22649 Lorain Road
Fairview Park, Ohio 44126


**ATTORNEYS FOR APPELLEE**

Gary A. Ebert
Charles W. Zepp
Seeley Savidge Ebert & Gourash Co.
26600 Detroit Road, Suite 300 - 3rd Floor
Westlake, Ohio 44145

MARY EILEEN KILBANE, P.J.:

{¶1} Plaintiff-appellant, Gene Barry ("Barry"), appeals the trial court's judgment affirming the decision of defendants-appellees, the city of Bay Village and the city of Bay Village Board of Zoning Appeals (the "BZA") (collectively referred to as "City"), to deny Barry's variance request. For the reasons set forth below, we affirm.

{¶2} In June 2015, Barry filed an application with the BZA for a setback variance. Barry sought a variance from the 50-foot front yard setback requirement to build a utility room onto his existing home. In his application, Barry explained that the utility room was needed for storage of equipment, such as a lawn mower and lawn furniture. Barry's lot backs up to Lake Erie. The back end of Barry's lot is built to the property line. As a result, he could not build an addition in the back of his house.

{¶3} Barry previously received a 25-foot variance to build a garage on the front, west end of the house. The utility room Barry sought to build would have been on the east end of the house. This would have created a U-shaped house with the garage on the left, the utility room on the right and the front entrance in the middle.

{¶4} The City's front yard setback requirement is 50 feet. The existing utility room already encroaches 14 feet into the setback area. Barry's proposed storage room would encroach an additional 10 feet into the setback, making the setback 26 feet instead of 50 feet.

**{¶5}** In reviewing this variance request, the BZA was concerned that the lot was already "really over-built." The minutes from the BZA meeting state, in relevant part, that "[b]etween the house and the paving, the construction is right up to the street." The board members were also concerned that "the property is all concrete in the front, and there is a requirement that a certain portion of the property be grass." The BZA explained that when deciding whether to grant a variance, the board considers "the significance of the size of the variance requested" and noted that Barry's request "represents a 50 percent reduction in the front setback, since a 14 foot setback had previously been granted and this request is for an additional 10 feet." The BZA voted to deny Barry's requested variance in July 2015.

**{¶6}** In September 2015, Barry submitted a new application decreasing the size of the requested variance from 24 feet to 22 feet. This reduced the size of the addition from 10 feet to 8 feet. The BZA considered this application at its October 1, 2015 meeting. The BZA reviewed its previous discussion at the July meeting where it was noted that the property is already very densely built and a previous variance had been granted on a setback for the garage. The consensus in July was that the property was already dense enough. The BZA stated that it would be "going against the spirit of the reason for the front yard setback to allow more because somebody wants more storage." After the discussion, the application was tabled and the BZA asked Barry to submit a new proposal. As a result, Barry submitted a third application and reduced the requested variance from 22 feet to 20 feet, thereby allowing for a six foot addition.

**{¶7}** At the November 2015 BZA meeting, Barry again explained that he needed the utility room for storage of his maintenance equipment since his house does not have a basement or an attic. Having the storage room for maintenance equipment would allow him to park his cars in the two-car garage. Barry also cited the lack of alternative sites on the property to address his problem. The BZA, however, was still concerned that Barry's property was "overbuilt" and his property already extended well into the setback area. The BZA denied Barry's third request.

**{¶8}** Barry then filed an administrative appeal pursuant to R.C. Chapter 2506, challenging the City's denial of his variance request. The common pleas court affirmed the City's decision, finding in relevant part:

> After applying the law as set forth in *Kisil v. Sandusky*, 12 Ohio St.3d 30, 456 N.E.2d 848 (1984), and *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 [(1986)] to the facts of this case, this court finds the board's decision is supported by substantial, reliable, and probative evidence. Therefore, the board's decision is affirmed.

**{¶9}** Barry requested findings of fact and conclusions of law. The trial court denied his request. This appeal followed. Barry raises the following two assignments of error for review.

### Assignment of Error One

The trial court failed to apply the proper standard of review to the evidence presented.

### Assignment of Error Two

The trial court's denial of appellant's request for a variance of setback requirements is against the manifest weight of the evidence.

Standard of Review

{¶10} In the first assignment of error, Barry argues the trial court failed to apply the proper standard of review. He contends the trial court should have conducted a review similar to a de novo review and should have provided findings and an explanation for its decision.

{¶11} This court, however, has previously held that the common pleas court "'has no duty to issue findings of fact and conclusions of law in an appeal from the decision of an agency of a political subdivision where the court does not function as a fact-finder in a trial *de novo*.'" (Emphasis sic.) *Ingle Inn, Inc. v. Brook Park*, 8th Dist. Cuyahoga Nos. 54838 and 54839, 1989 Ohio App. LEXIS 191, * 13-14 (Jan. 19, 1989), quoting *3910 Warrensville Ctr. v. Warrensville Hts.*, 20 Ohio App.3d 220, 485 N.E.2d 824 (8th Dist.1984), syllabus.

{¶12} Rather, in an administrative appeal, the common pleas court considers the "'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000); *Kisil,* 12 Ohio St.3d 30, 456 N.E.2d 848. The common pleas court must "not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a

preponderance of reliable, probative, and substantial evidence to support the board's decision." *Kisil* at 34.

{¶13} Here, the trial court concluded the BZA's decision was supported by competent, credible evidence. In fact, the trial court stated that it found the BZA's decision to be "supported by substantial, reliable, and probative evidence." Thus, the trial court applied the appropriate standard of review.

{¶14} Accordingly, the first assignment of error is overruled.

Manifest Weight of the Evidence

{¶15} In the second assignment of error, Barry argues the trial court's denial of his request for a variance is against the manifest weight of the evidence. However, we do not review the trial court's judgment in administrative appeal under a manifest weight of the evidence standard.

{¶16} Rather, R.C. 2506.04 grants a more limited power to the court of appeals

> "to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." [*Kisil*, 12 Ohio St.3d at fn. 4, 465 N.E.2d 848]. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. Of Edn. v. State Emp. Relations Bd.*

*Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433.

**{¶17}** Thus, this court will review the judgment of the trial court only to determine if the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence. *Wolstein v. Pepper Pike City Council*, 156 Ohio App.3d 20, 2004-Ohio-361, 804 N.E.2d 75, ¶ 21-22 (8th Dist.). "'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶18}** Barry requested a variance of the City's setback requirement, which relates to area requirements. In deciding whether to grant an area variance, the Ohio Supreme Court has instructed zoning boards to consider the applicant's "practical difficulties." *Kisil*, 12 Ohio St.3d at 32-33, 465 N.E.2d 848; *Duncan*, 23 Ohio St.3d at 85-86, 491 N.E.2d 692. The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered "practical difficulties" in the use of his property include, but are not limited to:

> (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. See, generally, 3 Anderson,

American Law of Zoning (2 Ed.1977), Variances, Section 18.47 et seq.; *Wachsberger v. Michalis* (1959), 19 Misc.2d 909, 191 N.Y. Supp.2d 621.

*Duncan* at 86.

{¶19} Bay Village Codified Ordinance 1127.04 sets forth the powers and duties of the BZA. With respect to variances, Bay Village Codified Ordinance 1127.04(d), states in relevant part:

Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this Zoning Code, on appeal from a decision of the Building Director the Board shall have the power in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this Zoning Code so that the public health, safety, morals and general welfare may be secured and substantial justice done. In granting a variance, after public notice, the Board may require appropriate conditions and safeguards that they deem necessary to protect, promote and improve the surrounding properties and neighborhood. Such variance shall be limited to specific cases where the following conditions also exist:

(1) The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of physical size, shape or other characteristics of such premises or adjoining premises which differentiate such premises sought to be built upon or used will create a difficulty or hardship caused by a strict application to the provisions of this Zoning Code not generally shared by other lands or structures in the same district.

(2) Refusal of the variance or modification appealed for will deprive the owner of the premises sought to be built upon or used of substantial property rights.

(3) Granting of the variance or modification appealed for will not be contrary to the purpose and intent of the provisions of this Zoning Code.

{¶20} Courts have applied the *Duncan* factors in conjunction with local zoning ordinances in determining whether to disturb the administrative decision, even if they are

not identical to the *Duncan* factors. *Phillips v. Westlake Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 92051, 2009-Ohio-2489, ¶ 54, citing *Stickelman v. Bd. of Zoning Appeals*, 148 Ohio App.3d 190, 2002-Ohio-2785, 772 N.E.2d 683, ¶ 32 (2d Dist.).

{¶21} Furthermore, "'no single factor controls in a determination of practical difficulties; the inquiry should focus on the spirit rather than the strict letter of the zoning ordinance so that substantial justice is done.'" *Id.* at ¶ 59, quoting *Dyke v. Shaker Hts.*, 8th Dist. Cuyahoga No. 83010, 2004-Ohio-514, ¶ 30. Thus, a variance may be denied even if some factors weigh in favor of the property owner. *Id.* at ¶ 56, citing *Stickelman*.

{¶22} Barry argues that all of the *Duncan* factors point to practical difficulties. We disagree. Barry cannot demonstrate how his need for more storage is "peculiar" to his premises. The restrictions to the backyard are not unique. Barry acknowledges that all of the houses on the lake in his neighborhood share the same restriction. The variance does not deny Barry of "substantial property rights." Although a utility room would make storing maintenance equipment easier, surplus storage is not a substantial property right.

{¶23} Furthermore, the BZA was concerned that the requested variance was substantial. If the proposed addition were added to the existing structure, there would be a 20-foot variance from the 50-foot setback requirement, which equated to a variance of 40 percent. Barry's garage already encompasses a 25-foot variance. Barry argues that because he already has a 25-foot variance for the garage, he should receive a 20-foot variance for the storage room. His garage provides a space for storage and also caused

his property to be "overdeveloped." Therefore, Barry's need for a storage room does not outweigh the City's right to maintain its zoning requirements.

{¶24} Additionally, Barry admitted that he purchased the property with knowledge of the zoning restrictions. Furthermore, Barry has not demonstrated that the proposed utility room provides his only storage option. The BZA decided that the lot was "overbuilt" already and concluded that Barry's desire to increase storage and solve a door problem are "not good enough reasons to go against the ordinance and grant another variance." It would be "going against the spirit of the reason for the front yard setback to allow more because somebody wants more storage." Based on the foregoing, the trial court properly concluded that the BZA's decision was supported by substantial, reliable, and probative evidence.

{¶25} The second assignment of error is overruled.

{¶26} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR