OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, the Beaver Township Board of Zoning Appeals, appeals the decision of the Mahoning County Court of Common Pleas that reversed its decision and ordered that the Board grant a conditional use permit to Plaintiff-Appellee, Angels for Animals, Inc. The Board contends that the trial court used an improper standard when reviewing the Board's decision and that Angels failed to prove by a preponderance of the reliable, probative, and substantial evidence that the proposed use would comply with the standards the Board was obligated to consider before granting the permit. The Board's arguments are meritless.
 {¶ 2} Angels provided reliable, probative, and substantial evidence that its proposed use would meet each of the standards in the ordinance. The facts in this case support the trial court's decision. The trial court's judgment is affirmed.
 Facts {¶ 3} The Board granted Angels a conditional use permit to open a non-profit animal rescue shelter on the site of an abandoned slaughterhouse on a property zoned for industrial uses. Unfortunately, the shelter had to euthanize animals in the course of its business. Approximately four to six hundred pounds of dead animals were taken from the shelter to a dump every week.
 {¶ 4} In 2003, Angels requested an additional conditional use permit to allow it to operate an animal crematory on-site so the carcasses could be disposed of in another way. Angels had agreed to purchase an incinerator which had been approved by the Ohio EPA. That incinerator burned seventy-five pounds of animal an hour and was designed to produce very low levels of smoke and odor, even if it were constantly used. In accordance with statute, the Board sent out notice of a public hearing concerning Angels' request for this conditional use permit.
 {¶ 5} At the hearing, Angels produced evidence supporting its claim that the incinerator would be tastefully designed, would not produce excessive smoke and odor, and would not place an additional burden on public services. Some of the surrounding property owners also testified at the hearing. Their land was all being used for agricultural or residential purposes. They were concerned that the incinerator would produce smoke and odors and voiced complaints about the animal noises, especially dog barking, coming from Angels' property. After multiple hearings, the Board denied the requested conditional use permit.
 {¶ 6} Angels timely appealed the Board's decision to the trial court, which scheduled the matter for a non-oral hearing. After the parties submitted their briefs, the trial court found that the Board erred when it denied Angels' request for the conditional use permit. It found no evidence that the incinerator would cause excessive smoke odors or other detrimental effects and that the Board's decision was arbitrary and unreasonable. Accordingly, it ordered that Angels' request for a conditional use permit to operate an animal crematory be approved. It is from this decision that the Board timely appeals.
 {¶ 7} On appeal, the Board argues the following three assignments of error:
 {¶ 8} "The trial court erred in reversing the decision of the Beaver Township Board of Zoning Appeals and/or abused it's [sic] discretion in reversing the decision of the Beaver Township Board of Zoning Appeals."
 {¶ 9} "The trial court erred in making a factual determination regarding whether or not the applicant satisfied the requirements necessary for the issuance of a conditional use permit."
 {¶ 10} "The trial court erred in not properly applying the precedent set in this appellate district."
 {¶ 11} In each of its assignments of error, the Board argues the trial court erred when it ordered that the Board grant the conditional use permit because the trial court used an improper standard of review, ignored the facts supporting the Board's initial decision, and ignored the local ordinance's language governing conditional use permits. We will address those assignments of error together.
 Standard of Review {¶ 12} The decision to deny an application for a conditional use is administrative in nature. Community Concerned Citizens, Inc. v. UnionTwp. Bd. of Zoning Appeals, 66 Ohio St.3d 452, 455, 1993-Ohio-0115. R.C.2506.01 provides that "[e]very final order, adjudication, or decision of any * * * board * * * of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located."
 {¶ 13} When the trial court is reviewing an administrative agency's decision under that section, it is bound to presume the decision of the administrative agency is reasonable and valid. Community ConcernedCitizens at 456. The party challenging the administrative agency's decision bears the burden of rebutting that presumption. EssrocMaterials, Inc. v. Poland Twp. Bd. of Zoning Appeals (1997),117 Ohio App.3d 456, 462. Although the Board contends the trial court erred by weighing the evidence, that is the trial court's duty in an administrative appeal. A trial court reviewing the decision of an administrative body must weigh the evidence in the record in order to determine whether there is a preponderance of reliable, probative, and substantial evidence supporting the decision and may not substitute its judgment for that of the agency. Id.; see also R.C. 2506.04 ("The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record").
 {¶ 14} Of course, this does not mean the trial court may ignore the Board's decision. "Certainly, a board cannot make arbitrary decisions. On the other hand, the board must have discretion to perform its job."Shelly Materials, Inc. v. Daniels, 2nd Dist. No. 2002-CA-13, 2003-Ohio-0051, ¶ 90. "The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C.2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd. of Zoning Appeals, 90 Ohio St.3d 142,147, 2000-Ohio-0493.
 {¶ 15} Our review of the trial court's decision is "more limited in scope." Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. We may only determine whether, as a matter of law, the trial court's judgment is supported by a preponderance of reliable, probative, and substantial evidence. Id.; Ivkovich v. Steubenville, 144 Ohio App.3d 25, 35,2001-Ohio-3282. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St.3d 257, 261. Thus, we do not have the same authority as the trial court to weigh the evidence and must rely on its evidentiary findings if they are supported by a preponderance of reliable, probative, and substantial evidence. Adelman Real Estate Co.v. Gabanic (1996), 109 Ohio App.3d 689, 693.
 Administrative Adjudicatory Hearings {¶ 16} Public opinion is not evidence which may be considered when a Board is deciding whether to grant a conditional use permit. "A hearing upon an application for a conditional use permit is an adjudicatory hearing, which, although open to the public, is not a public hearing where members of the general public may speak." Heiney v. Sylvania Twp.Bd. of Zoning Appeals (1998), 126 Ohio App.3d 391, 396, citing In reRocky Point Plaza Corp. (1993), 86 Ohio App.3d 486, 491-492. "A public hearing is one where members of the general public may speak and express their views on the question of governmental, political and policy considerations as to whether certain legislation should be adopted. Adjudication hearings, however, are not subject to such public comment but, instead, involve the determination of rights of specific persons and whether such rights should be granted based upon evidence (not public opinion) presented at the hearing." Rocky Point Plaza at 491.
 {¶ 17} "The fact that adjudicatory hearings are to be open to the public does not result in their transformation into legislative public hearings with the corresponding right to receive input of public comment at that time. The ploy of swearing in the members of the public does not alter the fact that the bulk of these witnesses are merely offering their subjective and speculative comments and unsubstantiated opinions. Such testimony cannot rise to the level of the reliable, probative, and substantial evidence required under Kisil and Dudukovich [v. LorainMetro. Hous. Auth. (1979), 58 Ohio St.2d 202,] unless there are facts included as part of those opinions." Adelman Real Estate at 694.
 {¶ 18} The Board contends that the trial court used an incorrect standard of review when it determined that the Board should have granted the conditional use permit. It argues that the trial court itself pointed to evidence supporting the Board's decision to deny the permit. Thus, it contends the trial court erred when it concluded that the Board's decision was not supported by a preponderance of reliable, probative, and substantial evidence. But the "evidence" the trial court says supports the Board's decision is a petition signed by area residents opposing the conditional use permit, statements by unidentified people about smoke and odor issues at a funeral home, and concerns expressed by local residents about both the health risks of smoke from the crematory and the "unsettling effect" of having a crematory close-by. As will be more fully explained below, this is not reliable, probative, and substantial evidence either the Board, the trial court, or this court may consider when determining whether the Board should grant the proposed conditional use permit.
 Ordinance Requirements {¶ 19} The Board first contends that the trial court erred by finding that Angels met all the necessary requirements for granting a conditional use permit. Section XV(A) of the Beaver Township Zoning Ordinance provides as follows:
 {¶ 20} "The Board of Appeals shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find adequate evidence showing that such use at the proposed location.
 {¶ 21} "1. Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area;
 {¶ 22} "2. Will be served adequately by essential public facilities and services such as highways, streets, police, and fire protection, drainage structures, refuse disposal, water and sewer, and school; or that the persons or agencies responsible for the establishment of the proposed uses shall be able to provide adequately for any such service;
 {¶ 23} "3. Will not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community;
 {¶ 24} "4. Will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any person, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, odors, health hazards or water pollution;
 {¶ 25} "5. Will have vehicular approaches to the property which shall be so designed to not create an interference with traffic or surrounding public thoroughfares;
 {¶ 26} "6. Will not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance."
 {¶ 27} The Board contends that Angels did not present any evidence that it satisfied any of the BTZO's standards for issuing a conditional use permit. It further argues that satisfaction of these standards are prerequisites to the Board's review of an application for a conditional use. Thus, it contends the trial court erred when it ordered that the conditional use permit be granted.
 {¶ 28} Angels does not dispute that the standards in the Section XV(A) of the BTZO are prerequisites to the Board's review of its application for a conditional use. Rather, it contends that it presented reliable, probative, and substantial evidence showing that the requested conditional use would not violate any of the standards in the ordinance. It refers to the evidence against it as "speculative and uncorroborated."
 {¶ 29} Although the Board focuses its arguments on the first and fourth standard, it argues that Angels failed to provide any evidence on any of the standards in Section XV(A) of the BTZO. We will address whether there is a preponderance of reliable, probative, and substantial evidence that the proposed use meets each standard.
 Appearance and Essential Character of the Vicinity {¶ 30} The Board claims that Angels failed to present any evidence that the conditional use it was seeking "[w]ill be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area." More specifically, it claims that there is no evidence that the crematory's design will appear harmonious with the surrounding area. It further contends that installing an incinerator at the only non-residential facility in the area would change the general nature of this residential neighborhood. Finally, the Board cites to the record where residents expressed concerns about property values and changes in the character of the neighborhood.
 {¶ 31} The Board is incorrect when it contends that there is a preponderance of reliable, probative, and substantial evidence that the crematory building will not be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity. The building housing the crematory is a concrete block building on the least exposed side of Angels' main building. It was designed so it would match the design of the main building. Every witness who described the appearance of Angels' building said complimentary things about it. And there is no evidence that the crematory's building would appear out of place in the area.
 {¶ 32} The Board is also incorrect when it cites to residents' expressed concerns about property values in support of its decision to deny the conditional use permit. The residents who expressed concerns about declining property values gave no empirical evidence that allowing the conditional use would reduce their property values. They only offered opinions without stating a reliable basis for those opinions. Unsupported lay opinions and concerns are not reliable, probative, and substantial evidence and cannot be accepted without the person expressing the opinion giving some reliable basis for the opinion. See Shelly Materials at ¶ 32.
 {¶ 33} Finally, there is a preponderance of reliable, probative, and substantial evidence that allowing this conditional use will not "change the essential character of the same area." The Board's argument on this aspect of the ordinance is basically that this proposed use would not conform to the essential character of the area since the surrounding properties were residential. According to the Board, allowing a crematory in this area would change the area from primarily residential to something different. It places a great deal of emphasis on the fact that Angels' facility is the only non-residential facility in the area. The Board's argument is improper.
 {¶ 34} A board of zoning appeals cannot deny a conditional use permit merely because that conditional use is no longer desired or that the use is different than the surrounding uses. The local legislature approved this use as a conditional use for any type of property, regardless of whether the property is zoned for residential, commercial, or industrial uses. If the Board denies the conditional use merely because the residents did not want it, then "the decision amounts to a rezoning without legislative action." Essroc Materials at 460. A board of zoning appeals cannot deny the conditional use permit on that basis. Id.;Gillespie v. Stow (1989), 65 Ohio App.3d 601, 607; Shelly Materials
(If general incompatibility with the surrounding uses were the only issue, then conditional uses would never be allowed). If the residents believe that crematories should never be allowed in residential areas, then the BTZO should be amended to reflect that. But for now it must be enforced as written.
 {¶ 35} Furthermore, allowing this crematory will not change the essential character of the area. Even if the surrounding properties are zoned for agricultural and/or residential uses, this property is zoned for industrial uses. The BTZO allows any use in this area, except for certain specifically prohibited uses. A slaughterhouse/meat packing house, one of the uses generally prohibited by the BTZO, was located on the property before Angels bought it, although it had been abandoned for an unknown period of time. One neighbor testified that he would see rats in his yard even after the slaughterhouse shut down and one of the Board members referred to it as "the rat infested rack of a packing house." Thus, even if Angels did not operate its facility on the property, some other business could operate an industrial facility there. Many other non-residential facilities could be opened on this site, again because Angels is located in an area zoned for industrial uses.
 {¶ 36} The evidence supports the trial court's conclusion that allowing this conditional use will not change the essential character of the area. Angels' property is zoned for industrial uses, it was formerly a "rat infested" slaughterhouse, the road next to Angels' property was only recently paved, and there is still a dust problem.
 {¶ 37} The Board argues that this type of conclusion conflicts with this court's decision in Koch v. Bd. of Zoning Appeals of Austintown Tp.
(Mar. 14, 2000), 7th Dist. No. 98 CA 164. But while both this case andKoch have some similarities, they are very different in one important aspect. In Koch, the trial court affirmed a decision denying the permit. Thus, on appeal, this court was bound by our standard of review to see whether the decision by the trial court affirming the Board's decision denying the permit was supported by a preponderance of reliable, probative, and substantial evidence. In this case, the trial court concluded that the permit should have been granted. We are again bound by our standard of review but must determine whether the trial court's decision reversing the Board's decision denying Angel's permit was supported by the preponderance of reliable, probative, and substantial evidence.
 {¶ 38} The residents' desire for the area to be residential in nature is at odds with the present zoning classifications and the BTZO. The Board has already approved a conditional use permit allowing Angels' facility. Allowing a crematory which produces little pollution, has been approved by the Ohio EPA, and will be used only occasionally is not likely to change the essential character of the neighborhood. The trial court's decision in this regard is supported by a preponderance of reliable, probative, and substantial evidence. The Board's is not. Given our standard of review, we must conclude that the Board's arguments in this respect are meritless.
 Public Services {¶ 39} The Board does not describe why it believes Angels did not produce any evidence that its proposed use "[w]ill be served adequately by essential public facilities and services such as highways, streets, police, and fire protection, drainage structures, refuse disposal, water and sewer, and school; or that the persons or agencies responsible for the establishment of the proposed uses shall be able to provide adequately for any such service." And the record is to the contrary. The incinerator is powered by natural gas and Angels has provided for two alternate sources of that natural gas. The local fire department has no concerns with the installation of the incinerator. Angels is already providing for refuse disposal and described how that service would continue. The streets around the facility are sufficient to meet the facility's needs and there is no indication that installing this incinerator would create a need for additional drainage, water, sewer, school, or police protection services. The Board's argument that Angels provided no evidence on this issue is incorrect. The trial court's decision in this regard is supported by a preponderance of reliable, probative, and substantial evidence.
 Cost to the Community {¶ 40} The Board also argues there is no evidence that the proposed use "[w]ill not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community." Once again, this argument is meritless.
 {¶ 41} As stated above, the local fire department has no concerns with the installation of the incinerator. The existing services are adequate to meet the facility's needs. All the evidence on the record demonstrates that granting this conditional use will not create excessive additional community costs. The trial court's judgment in this regard is supported by a preponderance of reliable, probative, and substantial evidence.
 Smoke, Odors, and Fumes {¶ 42} The Board argues that the conditional use Angels was seeking would cause "excessive production of traffic, noise, smoke, fumes, glare, odors, health hazards or water pollution." It contends that there is no evidence that the incinerator would not produce smoke, odor, or fumes. Accordingly, the Board believes there is reliable, probative, and substantial evidence supporting its decision.
 {¶ 43} The Board's reasoning on this issue is incorrect because it concentrates on the fact that Angels cannot guarantee that there will beno smoke, odor, or fumes. But the ordinance only prohibits uses which cause excessive smoke, odor, or fumes. The reliable, probative, and substantial evidence introduced at the hearing demonstrates that this incinerator will not produce excessive pollutants. The Ohio EPA approved this incinerator and it will both periodically inspect the incinerator and review its logs. Angels testified they would only use the incinerator periodically, but it has been approved for around-the-clock use. The manufacturer testified that the primary burner would shut down if the afterburner part of the oven is not at the temperature required to burn off excess smoke and odors or if there is a different malfunction. Other communities using the same oven have not had problems with smoke, odors, or fumes and have recommended this particular oven.
 {¶ 44} Some residents expressed a great deal of concern about the smoke, odor, and fumes which this crematorium would release. And they introduced some specific examples of other crematoriums that produced excessive smoke, odors, and fumes. But there is no evidence that any of these other incinerators were of the same type as the one proposed in this case. Thus, although the residents provide a great deal of speculation about the production of smoke, odors, or fumes, they have provided no reliable, probative, and substantial evidence that this incinerator will produce excessive smoke, odor, or fumes.
 {¶ 45} Of course, no one has promised that there will be no smoke, odor, or fumes. Both the manufacturer and EPA officials stated that some smoke, odor, or fumes were a possibility. But Section XV(A)(4) of the BTZO only prohibits conditional uses which would produce excessive smoke, odors, or fumes. There is no reliable, probative, and substantial evidence that the incinerator will produce excessive smoke, odor, or fumes. All of the evidence in the record is to the contrary. The trial court's decision in this regard is supported by a preponderance of reliable, probative, and substantial evidence. The Board's arguments are meritless.
 Traffic {¶ 46} The Board argues there is no evidence that the proposed use "[w]ill have vehicular approaches to the property which shall be so designed to not create an interference with traffic or surrounding public thoroughfares." But once again, their broad statement that there is no evidence is incorrect.
 {¶ 47} Angels introduced both plans for the proposed crematory and pictures of it. The crematory building is located behind Angels' main building, next to both Angels' dumpster and ts parking lot. This supports the trial court's conclusion that this proposed use will not create an interference with traffic or surrounding public thoroughfares. Thus, the trial court's judgment in this regard is supported by a preponderance of reliable, probative, and substantial evidence.
 Features of Major Importance {¶ 48} The Board finally argues that there is no evidence that the proposed use "[w]ill not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance." But this is also incorrect. Angels' attorney specifically stated that the incinerator would not harm the environment. The incinerator was approved by the Ohio EPA. And pictures of the area demonstrate no discernable natural, scenic, or historic feature of major importance anywhere near Angels' facility. The trial court's decision in this regard is supported by a preponderance of reliable, probative, and substantial evidence.
 The Board's Discretion {¶ 49} The Board argues that it has the discretion to deny a conditional use permit even if the evidence demonstrates that the proposed use will not violate the standards in Sectrion XV(A) of the BTZO. It contends that it is not automatically required to grant the permit, even if Angels met the prerequisites in Section XV(A) of the BTZO. Thus, it claims the trial court erred when it ordered that the conditional use permit be granted.
 {¶ 50} The Board's description of the law is correct. In CommunityConcerned Citizens, the Ohio Supreme Court rejected the argument that compliance with particular conditional use requirements makes a conditional use grant automatic. An applicant's ability to meet all specific conditional requirements is not controlling, but is simply "one factor to be considered." Id. at 456. This court echoed that principle inEssroc Materials. See id. at 462 ("Satisfaction of specific requirements is but a single factor and does not make the grant of a conditional use certificate automatic"). The BTZO states that the Board "may authorize the issuance of a Conditional Use Permit." This "clearly grants appellant discretionary authority in granting conditional use permits." EssrocMaterials at 463.
 {¶ 51} The BTZO provides that the Board "shall review the particular facts and circumstances of each proposed use" when deciding whether to grant a conditional use permit. BTZO, Section XV(A). And the BTZO provides that it is designed "to be the minimum requirements for the promotion of public health, safety, morals, comfort and general welfare." BTZO, Section XVIII. But it provides the Board with no guidance other than the requirements addressed above when the Board is deciding whether to grant a conditional use permit.
 {¶ 52} In its brief to this court, the Board places no bounds on the exercise of its own discretion. Instead, it argues that it could not have abused its discretion since there is no evidence that the proposed use would comply with the six standards listed in the BTZO. But as demonstrated above, Angels did provide evidence showing that its proposed use complied with each of the six standards in the ordinance. Thus, the Board's argument in this regard is incorrect.
 {¶ 53} We conclude that the trial court's decision that this conditional use will not harm the public health, safety, morals, comfort and general welfare is supported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 54} The nearby residents opposing the conditional use permit expressed one overriding concern about the presence of an incinerator: smoke and odor from the burning of 400-600 pounds of dead animals a week. According to the residents, Angels had reneged on the promises it made to get its initial conditional use permit and could not be trusted with an additional conditional use permit. But all of the evidence in the record shows that this incinerator will produce little smoke and odor and will only be used occasionally. The primary burner will shut off if the secondary burner, which eliminates smoke and odor, malfunctions. And Ohio EPA personnel would investigate the incinerator each time a resident complained of excessive smoke or odors. Angels further testified that it would not solicit for "private" animal cremations. Thus, the incinerator, which has been approved for use 24 hours a day, seven days a week, will only be used around six to eight hours a week by trained personnel.
 {¶ 55} The record also does not support a claim that Angels reneged on the terms of its initial conditional use permit. Allegedly, Angels did not follow through on its original design to let people drop off unwanted animals inside their facility. Instead, Angels has pens constructed outside its facility to house animals dropped-off overnight. Thus, the neighbors complained of noise. Angels has done things to minimize the noise, like plant a line of trees, but those efforts have not produced results yet; the trees have not yet grown. Furthermore, these issues are very different from the ones here. Whether an incinerator works as designed by a manufacturer is very different than whether a landowner designs a facility as promised. The trial court's decision in this regard is supported by a preponderance of reliable, probative, and substantial evidence.
 Conclusion {¶ 56} Although the landowners in this case have legitimate concerns, they cannot support those concerns with any reliable, probative, and substantial evidence. All of the evidence in the record supports the trial court's conclusion that the proposed conditional use satisfies all of the requirements in the BTZO. And in this case, there is no good reason to deny the permit if all those pre-conditions are satisfied. The Board's assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.