[Cite as *OMNI Property Cos. v. Sylvania Twp. Bd. of Zoning Appeals*, 2022-Ohio-3083.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

OMNI Property Companies

       Appellant

v.

Sylvania Township Board of
Zoning Appeals

       Appellee

Court of Appeals No.  L-21-1227

Trial Court No.  CI0202001961


**DECISION AND JUDGMENT**

Decided:  September 2, 2022

* * * * *

John J. McHugh, III, for appellant.

Julia R. Bates, Lucas County Prosecuting Attorney, and
John A. Borell and Elaine B. Szuch, Assistant Prosecuting
Attorneys, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This matter is before the court on appeal of the October 25, 2021 judgment

of the Lucas County Court of Common Pleas denying appellant OMNI Property

Companies' administrative appeal of the Sylvania Township Board of Zoning Appeals

denial of its conditional use permit application. Because we find that the common pleas court did not abuse its discretion, we affirm.

## I. Facts and Procedural History

### A. Proceedings before the Sylvania Township Board of Zoning Appeals

{¶ 2} On June 20, 2018, appellant, OMNI Property Companies (OMNI), filed an application for a conditional use permit to construct a memory care, assisted living, and congregate care residential facility on an approximately 10 acres located at 4828 and 4752 Whiteford Road in Sylvania Township, Lucas County, Ohio. The request was authorized under R.C. 519.14 and Sylvania Township Zoning (STZ) Resolution Articles 24 and 25.[1] An amended site plan was filed on August 19, 2019.

{¶ 3} The proposed layout was described in detail by the reports generated by the Toledo-Lucas County Plan Commission (TLCPC) and the Sylvania Township Planning and Zoning Division (STPZD). A summation provides that the property at issue includes two parcels fronting Whiteford Road and a landlocked portion of a parcel on Vineyard Road, contiguous to and south of the Whiteford properties. The parcels are zoned A-4 rural residential (low-density).[2] The parcels to the north are zoned A-4 rural residential,

---

[1]In 2021, the STZ Resolution was amended. The referenced sections align with the 2006 STZ Resolution which was controlling at all relevant times herein.
[2]A-4 rural residential is defined under the Article 6 of the STZ Resolution as providing "areas for low density residential development, which may or may not have public water and sanitary sewer." The R-4 district also listed several conditional uses including "Residential Care Facility" which could be approved by the BZA.

2.

to the south are A-4 and S-1 (special, with a public elementary school), to the east, A-4 and to the west, R-A (suburban residential with single-family residences.)

**{¶ 4}** The proposed facility consists of a two-story building housing an 18 unit memory care facility located closest to Whiteford Road, a two-story 41 unit assisted living facility and a 94 unit congregate care building both in the center of the property, and 8 stand-alone, independent living villas at the back of the property. The property would also have a dining and recreational facilities building. Excepting the villas, the buildings would be connected by enclosed corridors.

**{¶ 5}** Two ingress and egress routes would be located on Whiteford Road across from Saddlecreek Drive and Summerfield Road to the north of the property. The Whiteford entrance would have designated left turn lanes and the Summerfield entrance would run perpendicular to the property and pass between residences, precise location undetermined, located on Summerfield. The vehicular travel on the property would be looped with perpendicular parking along the loop. A parking lot consisting of 100 spaces (one per four beds and the excess reserved for future need) for the main building and two designated spaces for each of the eight villas. Public water and sewer are available at the site. A public sidewalk was to be installed along the frontage on Whiteford Road and an eight-foot privacy fence was to be erected on the south of the property due to the proximity of the neighboring residential property. Various landscaping was to be installed and as many existing trees as possible would be preserved.

3.

**{¶ 6}** On January 22, 2020, the commission staff report recommended that the TLCPC approve the conditional use permit for the following three reasons:

1. The request is compatible with the surrounding residential and commercial uses and zoning.

2. The request meets or exceeds the requirements of the Sylvania Township Zoning Resolution; and

3. The Conditional Use is not anticipated to adversely impact neighboring properties.

**{¶ 7}** The staff recommendation further indicated that the approval be conditioned on 33 additional compliance conditions relating to sanitary sewer regulations, site grading plans, a traffic study, various road, parking and sidewalk regulations, fire and rescue services, landscaping and a privacy fence, the use of cement board rather than vinyl siding, refuse collection restrictions, and prior approval of low-profile signage. The full TLCPC recommended the application's approval.

**{¶ 8}** Following its receipt of the TLCPC staff recommendation, the STPZD staff report also recommended approval of the conditional use request for the following five reasons:

1) The request is consistent with, and meets the requirements of, the Sylvania Township Zoning Resolution.

4.

2) The request presents a suitable transition between the single-family dwellings in the area and the commercial enterprises to the north and institutional (school) use to the south.

3) The residential use of the property is consistent with the surrounding residential uses,

4) The request should not be significantly detrimental to nearby properties.

5) The request will be served adequately by public facilities and services.

{¶ 9} The staff report recommended the 33 conditions outlined in the TLCPC staff recommendation and added four additional conditions: that sidewalks be installed along both Whiteford and Summerfield Roads, an eight foot privacy fence be erected along the south to act as a buffer, that exterior lighting be directed downward, and that the three parcels be combined into one parcel. OMNI agreed to all the conditions.

{¶ 10} On February 3, 2020, the matter proceeded to a public hearing before the BZA. During the hearing, several neighboring property owners testified in opposition. Their main objections could be classified concerns over increased traffic, the facility impacting the residents' enjoyment and values of their property, and the possibility of sex offenders on the OMNI property and their access to the neighboring elementary school. The property owners abutting the subject property to the south voiced, through their

5.

attorney, specific objections relating to the service drive and its proximity to the living areas in their home.

{¶ 11} The documentary evidence submitted to the board included the TLCPC and STPZD staff reports and recommendations, the 2018 Sylvania Township Land Use Plan, relevant zoning provisions, the traffic impact study, aerial views of other OMNI nursing properties, and two letters of support from communities with OMNI nursing properties.

{¶ 12} On March 9, 2020, the BZA entered its final decision denying the conditional use permit. The board first explained the evidentiary standard guiding its decision as the "preponderance of substantial, reliable and probative evidence present in the record." The board stated that "[e]vidence submitted outside the application process and hearing cannot be considered." The board further warned that to establish reliable and probative evidence, "witnesses must testify about relevant facts and not their subjective and unsubstantiated opinions."

{¶ 13} In its findings of fact, the BZA stated that Whiteford Road has a significant traffic volume but that most of the facility residents would not be driving. It stated that the project would create 60-80 jobs and that shift changes would be coordinated with the adjacent elementary school's schedule. The board noted that the traffic study "established that the proposed development will have a minimal impact on existing traffic-less than a 2% increase." And, in order to mitigate potential traffic concerns,

6.

OMNI would install left turn lanes for both northbound and southbound traffic. Finally, the board noted that the service road is within 30 feet of at least one residence.

{¶ 14} The BZA then made the following conclusions of law. It noted that the board may grant a conditional use application under the STZ Resolution only where "such approval will be consistent with the general purpose and intent of the Township Zoning Resolution as well as the general purpose and intent of the Sylvania Township Land Use Plan." Specifically, the conditional use must meet all the requirement of STZ Resolution 2503(A)-(E) which states:

A. The proposed project will be consistent with the general objectives, or with any specific objective or purpose, of the Township Zoning Resolution.

B. The proposed development will be harmonious with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.

C. The proposed project will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, and adequate drainage, refuse disposal, water and sewer, and schools.

D. The proposed development will not involve uses, activities, processes, materials, equipment and conditions of operation that will be

7.

significantly detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors; and

E. The proposed development will have vehicular approaches to the property that shall be so designated as not to create interference with existing traffic on surrounding public streets or roads.

{¶ 15} The board then concluded that the proposed development was not consistent with the general objectives of the zoning classifications of A-4 rural residential and R-A suburban residential. (STZR 2503(A) not established.) The board determined that the proposed facility and its use was not harmonious with the "existing and intended character of the general vicinity" and would "change the essential character of the area." (STZR 2503(B) not established.)

{¶ 16} The BZA concluded that the proposed facility would be served by public water and sanitary sewers and police and fire. The board noted that "[w]hile Whiteford Road has a significant volume of vehicular traffic, the only credible evidence submitted to the Board establishes the proposed project will have minimal impact on existing traffic." (STZR 2503(C) established.)

{¶ 17} As to the finding that the service road would be located within 30 feet of at least one residence, the BZA concluded that it would be "significantly detrimental to

8.

nearby persons and property, or the general welfare by reason of excessive production of traffic and noise." (STZR 2503(D) not established.)

{¶ 18} Finally, the board found that the proposed development would have vehicular approaches to aid in mitigation of any traffic concerns. (STZR 2503(E) established.)

{¶ 19} Based on its findings, the BZA then determined that because all the requirements under STZR 2503 were not met, the conditional use request was unanimously denied.

## B. Appeal to the Lucas County Court of Common Pleas

{¶ 20} OMNI commenced an R.C. Chapter 2506 administrative appeal of the BZA's decision on April 6, 2020. In its merit brief filed on May 19, 2020, OMNI argued that the BZA's decision denying its application was arbitrary and capricious and not supported by the reliable and probative evidence before the board. OMNI recounted the hostile nature of the February 3, 2020 BZA hearing where, according to OMNI, 20 neighbors voiced their personal, unsupported opinions and that such opinions were improperly considered by the BZA in reaching its decision. Neighbors voiced concerns relating to three main areas traffic, sex offenders, and maintaining the character of the neighborhood. OMNI further stressed that the conditional use it requested "residential care facility" was specifically enumerated as a permitted, conditional use. And that, by

9.

its definition, a conditional use is a use that varies from the surrounding uses and a denial cannot be based on such a finding.

{¶ 21} The BZA countered that in rendering its decision, the board relied only on evidence properly in the record. For example, the lay witness testimony about the impact traffic on Whiteford Road had on the enjoyment of their properties was permitted but only the traffic report, submitted by OMNI, was admissible to demonstrate the impact the proposed facility would have on traffic in the area. The BZA agreed that the speculative testimony regarding the potential for an increase of sex offenders in the area was inadmissible. Finally, the BZA stated that witness observations about the character of the area was competent and admissible.

{¶ 22} The BZA then argued that the decision was supported by substantial, reliable and probative evidence in that OMNI did not meet its burden demonstrating that the development was consistent with the "purpose and intent" of the STZ Resolution or the 2018 Land Use Plan. It further argued that the size and scope of the proposed residential facility far exceeded the purpose of the A-4 rural residential designation and was not harmonious with the surrounding single-family residential neighborhood. Finally, the BZA claimed that there was reliable evidence presented that the proposed facility would cause detriment to at least one neighboring residence.

10.

{¶ 23} On October 25, 2021, in a lengthy and detailed judgment entry, the trial court[3] denied OMNI's appeal. The court rejected OMNI's contention that the BZA based its decision on public opinion rather than the evidence in the record and that it did not receive a fair adjudicatory hearing. The court acknowledged that although the BZA indulged the presentation of discountable testimony, it was evenhanded in its treatment of OMNI, swiftly dealt with audience disruptions, and maintained the flow of the proceedings. Further, the court found that during the hearing OMNI was represented by competent counsel, was given the opportunity to present a narrative in support of its request, introduced evidence, and was not denied the opportunity to cross-examine sworn witnesses or object to testimony. The court further concluded although parties to an action, not individual witnesses, must have standing to appeal an administrative decision, it does not affect their ability to present hearing testimony. Finally, the court indicated that it could find no evidence in the record that the board was improperly motivated to deny the application.

{¶ 24} The court then examined the standard of review applicable to administrative appeals as set forth in R.C. 2506.04, noting that the inclusion of irrelevant testimony in the record did not act to subvert the ultimate question of whether the BZA's judgment was supported by substantial, reliable, and probative testimony. The court

---

[3]We acknowledge that for purposes of an appeal under R.C. Chapter 2506, a court of common pleas is a reviewing, rather than a trial court. However, for ease of discussion we will refer to the court as the trial court or the court of common pleas.

11.

recognized that several neighbors presented fact-based testimony regarding the nature of their properties and the neighborhood. The court opined that "the competent and probative aspects of the testimony are not indissociably tied to the [unsubstantiated] assertions, and they may be considered in their own right."

{¶ 25} Addressing the merits of the BZA's decision, the court concluded that although a residential care facility is listed as a conditional use in an R-4 district for which an application may be made, it is not a foregone conclusion that the request should be granted. The court quoted the STZR, Section 2503, which requires the requested use must be "consistent with the general objectives, or with any specific objective * * * of this Zoning Resolution." The court concluded that the denial can supported by the board's examination of the specific use requested, the specific location, and the surrounding circumstances. The appeal was then denied and appeal to this court followed.

## II. Assignment of Error

Assignment of Error No. 1: The trial court decision affirming denial by the Sylvania Township Board of Zoning Appeals of appellant's conditional use application to site a residential congregate care facility was erroneous as a matter of law.

12.

## III. Discussion

{¶ 26} OMNI's argument before us can be distilled down to three parts: 1.) that the trial court improperly restricted its scope of appellate review of the BZA's decision; 2.) that the BZA relied on unsupported testimony presented at the February 3, 2020 hearing; and 3.) that the BZA's decision that the proposed facility is not harmonious with the surrounding neighborhood was not supported by competent evidence.

### A. Administrative appeal standard of review

*1. The common pleas court's standard of review of an administrative appeal*

{¶ 27} OMNI commenced the appeal in the trial court pursuant to R.C. Chapter 2506. R.C. 2506.04 governs review of administrative appeals and provides:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on

questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

{¶ 28} It is the court's role to "weigh[] the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board." *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 13, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). "If it does not, the court may reverse, vacate, or modify the administrative decision." *Id.*; R.C. 2506.04. In fulfilling its role under the statute, the common pleas court begins with the presumption that the board's decision is valid; the appealing party has the burden to demonstrate otherwise. *JSS Properties, II, LLC v. Liberty Twp. Bd. of Zoning Appeals*, 2018-Ohio-1492, 110 N.E.3d 872, ¶ 6 (5th Dist.), citing *Hollinger v. Pike Twp. Bd. of Zoning Appeals*, 5th Dist. Stark No. 09CA00275, 2010-Ohio-5097.

*2. The appellate court's standard of review*

{¶ 29} The court of appeal's standard of review under R.C. Chapter 2506 is more limited than the trial court's review. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence. *Id.* at 34, fn. 4. Among those questions of law, the appellate court is tasked with the

question of whether the common pleas court abused its discretion. *Id.* The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Id.* Such a deferential standard of review in administrative appeals acts to strongly favor affirmance. *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30. *See generally*, *Shelly Materials, Inc. v. City of Streetsboro Planning and Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, 145 N.E.3d 246.

### B. The propriety of the standard of review utilized below

{¶ 30} OMNI first contends that the trial court employed an improper standard of review of the evidence presented at the hearing. Specifically, the court noted that such appeals

> [do] not authorize a weighing of competent evidence against incompetent evidence in determining whether the board's decision was properly supported. Nor does it permit courts to disregard substantial, reliable, and probative testimony supporting an administrative decision on grounds that other or even most of the testimony adduced in support of the decision was immaterial, irrelevant, or lacking in probative value.

{¶ 31} OMNI argues that this interpretation is at odds with the duty imposed under R.C. 2506.04 which specifically provides that the court weigh all the evidence in the

15.

record in determining whether the decision at issue is supported by a majority of the "substantial, reliable and probative evidence."

{¶ 32} OMNI further asserts that the court made a "mockery" of the standard set forth in R.C. 2506.04 by creating an "indissociable tie" standard as referenced by the court when it observed:

> [M]uch of the testimony is intermixed with assertions about increased traffic and musings about whether the proposed facility should be classified as commercial rather than residential. The former assertions are unsubstantiated and speculative and wanting for a proper foundation; the latter assertions are, among other things, irrelevant and immaterial, because Section 602 of the Resolution recognizes a residential care facility as a conditional use. But the competent and probative aspects of the testimony are not indissociably tied to the assertions, and they may be considered in their own right.

The court then proceeded to enumerate, analyze, and weigh the only what it believed to be the "competent and probative" evidence that was before the BZA.

{¶ 33} In making the above argument, OMNI specifically argues that because the majority of the testimony presented at the hearing consisted of unsubstantiated assertions, the trial court was required to factor those assertions into its weighing of the evidence under R.C. 2506.04. We find no such requirement.

{¶ 34} As set forth above, R.C. 2506.04 requires that a court determine whether the decision is supported by the preponderance of probative and reliable or "good" evidence on the whole record. The trial court correctly noted that unsubstantiated public opinion testimony is not reliable and probative evidence unless facts are included in the opinion. *Hindu Soc. of Greater Cincinnati v. Union Twp. Bd. of Zoning Appeals*, 2019-Ohio-2494, 139 N.E.3d 457, ¶ 28 (12th Dist.), quoting *Adelman v. Real Estate Co. v. Gabanic*, 109 Ohio App.3d 689, 672 N.E.2d 1087 (11th Dist.1996). In finding that the opinion testimony was not indissociably tied with the fact testimony, the court simply reaffirmed its role in weighing only good evidence and disregarding pure opinion testimony. It did not, contrary to argument, create a new standard.

### C. Evidence presented at the adjudicatory hearing

{¶ 35} OMNI relatedly contends that the board erroneously permitted and relied upon unsworn evidence in denying the permit. OMNI points to the testimony of adjacent neighbors whose attorney read an unsworn statement on their behalf though they were present at the hearing. OMNI further points to email correspondence by the same neighbors and their attorney providing additional, unsworn testimony to the board. OMNI argues that by failing to address the improper communications, the common pleas court compounded the error.

{¶ 36} During the February 3, 2020 adjudicatory hearing, attorney Richard Wolff testified on behalf of his clients, Glenn and Terri Swimmer, whose property abuts the

17.

proposed development to the south. Wolff distributed packets of information to the board and OMNI's attorney which included the statement that was read at the TLCPC hearing, a survey showing the Swimmers' property and the property at issue, and a rendering of a proposed barrier.

{¶ 37} Mr. Wolff then indicated that the Swimmers were opposed to the facility because of its dissonance from the residential nature of the surrounding neighborhood. Wolff stated that it was a "high-density project being shoehorned into a residential area on a road that is already at capacity." Wolff indicated that other senior living facilities in the area are located in less congested areas with better access. Finally, Wolff noted that the Swimmers' home is located only 30 feet from the driveway to the proposed OMNI facility and that the majority of their living spaces are on the north side (side closest to the driveway) of their home. Thus, noise from service vehicles, garbage trucks, etc. would "adversely impact" the use and enjoyment of their property. Interestingly, OMNI similarly provided unsworn written statements during the course of the hearing. No objection was made to either Mr. Wolff's testimony or the documents he provided and reviewing the testimony and documents, we cannot conclude that they were improperly considered.

{¶ 38} As to the email correspondence, the trial court acknowledged the correspondence but noted that the BZA Chairman immediately forwarded the documents to BZA counsel who advised Wolff that the documents would not be considered.

Further, the BZA decision makes no reference to the documents.  Finally, the documents were not properly introduced as evidence in the record below.

### D. Weight of the evidence

{¶ 39} Referenced above and its principal argument, OMNI contends that the BZA's decision was not supported by the weight of the competent evidence.  OMNI stresses that the decision to deny the application based on the BZA's assertion that the requested use was not "harmonious" with the surrounding neighborhood belies the very nature of a "conditional" use.

{¶ 40} A township board of zoning appeals may "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution."  R.C. 519.14(C)  "'[I]nclusion of conditional use provisions * * * in zoning legislation is based upon a legislative recognition that although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances.'" *Shelly Materials, Inc. v. Daniels*, 2d Dist. Clark App. No. 2002-CA-13, 2003-Ohio-51, ¶ 61, quoting *Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 341, 405 N.E.2d 1034 (1980).

{¶ 41} In making its argument, OMNI relies on a case involving the denial of a conditional use permit to add an on-site crematory for a non-profit animal shelter located on property zoned for industrial uses. *Angels for Animals, Inc. v. Beaver Twp. Bd. of*

19.

*Zoning Appeals*, 7th Dist. Mahoning No. 04 MA 80, 2004-Ohio-7209.  In *Angels for Animals*, the board initially denied the permit finding that none of the standards in the township zoning ordinance were established by the applicant.  On appeal to the common pleas court, the denial was reversed.

{¶ 42} On appellate review, the court rejected the board's argument that trial court's determination that a petition signed by area residents in opposition to the permit and unsupported lay opinions constituted reliable and probative evidence.  *Id.* at ¶ 18, 32.  The court also disagreed with the argument that adding the EPA-compliant crematory would change the essential nature of the area as the shelter was the only non-residential facility.  *Id*. at ¶ 32.  The court noted:

> A board of zoning appeals cannot deny a conditional use permit merely because that conditional use is no longer desired or that the use is different than the surrounding uses.  The local legislature approved this use as a conditional use for any type of property, regardless of whether the property is zoned for residential, commercial, or industrial uses.  If the Board denies the conditional use merely because the residents did not want it, then "the decision amounts to a rezoning without legislative action."  *Essroc Materials[, Inc. v. Poland Twp. Bd. of Zoning Appeals*, 117 Ohio App.3d 456,] 460, 690 N.E.2d 964 [(1997)].  A board of zoning appeals cannot deny the conditional use permit on that basis. *Id.*; *Gillespie v. Stow*

20.

(1989), 65 Ohio App.3d 601, 607, 584 N.E.2d 1280; *Shelly Materials[, Inc. v. Daniels*, 2d Dist. No. 2002-CA-13, 2003-Ohio-0051] (If general incompatibility with the surrounding uses were the only issue, then conditional uses would never be allowed).

*Id.* at ¶ 34.

{¶ 43} In reaching its decision, the court distinguished court precedent in *Koch v. Bd. of Zoning Appeals of Austintown Twp.*, 7th Dist. Mahoning No. 98 CA 164, 2000 WL 288656 (Mar. 14, 2000), where it affirmed the trial court's decision in an appeal from the denial of the conditional use requested. The *Angels for Animals* court noted that while *Koch* had factual similarities it was distinguishable in "one important aspect." *Id.* at ¶ 37. The court explained that in *Koch*, the trial court affirmed the board's denial; thus, on appeal, the court was limited to deciding whether the common pleas court's decision was supported by a preponderance of reliable, probative, and substantial evidence. *Id.*

{¶ 44} OMNI also relies on a zoning case from this court. *Heiney v. Sylvania Twp. Bd. of Zoning Appeals*, 126 Ohio App.3d 391, 710 N.E.2d 725 (6th Dist.1998). In *Heiney*, as in this case, a conditional use permit was sought to construct an assisted living facility in an A-4 zoned area. Reversing the denial of the permit by the board and the trial court, we concluded that the only probative evidence before the board was a traffic impact study demonstrating that the construction of the facility would have a minimal impact on traffic congestion. *Id.* at 396-397. The balance of the testimony at the hearing

21.

was speculative and relating to concerns about elderly residents driving or wandering away on foot and the general increase of traffic in the area. *Id.* at 397.

{¶ 45} In *Warren Family Funeral Homes, Inc. v. Toledo*, 6th Dist. Lucas No. L-15-1325, 2016-Ohio-5076, we examined whether a funeral home's application for a conditional use permit to add a crematorium was improperly denied. Affirming the trial court, we distinguished the *Heiney* decision where, in addition to the unsubstantiated opinion testimony, "substantial, reliable, and probative evidence" supporting the decision was also in the record. Such evidence included a 2010 study of the impact of crematoriums on property values. *Id.* at ¶ 18. So finding we noted that

> [w]hether the evidence that was presented by appellant to dispel the property value issue was more credible or probative than the Penn State study findings and testimony of the concerned residents was a question for the trial court to resolve. We do not find that the trial court abused its discretion in resolving that question.

*Id.* at ¶ 20. *See Glass City Academy, Inc. v. Toledo*, 179 Ohio App.3d 796, 2008-Ohio-6391, 903 N.E.2d 1236 (6th Dist.). *See also*, *Jennings v. Xenia Twp. Bd. of Zoning Appeals*, 2d Greene County No. 07-CA-16, 2007-Ohio-2355, ¶ 42-43, citing *Oberer Dev. Co. v. Fairborn*, 2d Dist. Greene NO. 98-CA-96, 1999 WL 235843 (Apr. 23, 1999).

{¶ 46} As set forth above, several witnesses testified regarding the nature of their properties and general congestion in the area. Further, testimony and documentary

22.

evidence was presented demonstrating that other OMNI nursing care facilities were located in areas with better accessibility, including additional lanes of travel and easier access points. Attorney Wolff provided testimony specific to the impact the proposed facility would have on its immediate neighbor.

{¶ 47} Based on the above, we find that the trial court's decision was supported by substantial, reliable, and probative evidence. Thus, we cannot find that the court abused its discretion when it affirmed the BZA's denial of the application for a conditional use permit. OMNI's assignment of error is not well-taken.

## IV. Conclusion

{¶ 48} On consideration whereof, the October 25, 2021 judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                              JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.            _____
CONCUR.                                            JUDGE

_____
                                              JUDGE

23.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.