**[Cite as *Moore v. Sandusky Bldg. Code Bd. of Appeals*, 2024-Ohio-1799.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Shameka L. Moore, Trustee | Court of Appeals No.  E-23-042 |
| Appellant | Trial Court No.  2022 CV 0116 |
| v. | |
| City of Sandusky Building Code Board of Appeals | **DECISION AND JUDGMENT** |
| Appellee | Decided:  May 10, 2024 |

* * * * *

Shameka L. Moore, pro se, appellant.

Stewart Hastings, City of Sandusky
Law Director, and Sarah C. Chiappone
Assistant Law Director, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Shameka L. Moore, Trustee, appeals, pro se, from a judgment entered by the Erie County Court of Common Pleas, affirming a decision by appellee, Sandusky Building Code Board of Appeals, to demolish appellant's building located at 937 W. Washington Street, Sandusky, Ohio. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and the Facts

### Notice, Order and Pending Order of Demolition

{¶ 2} On November 17, 2020, a Sandusky resident contacted the Sandusky Police Department, complaining that a large piece of metal had detached from the roof of appellant's property at 937 W. Washington Street and struck his vehicle, which had been parked nearby. As a result of that incident, together with the property's long history of degradation, the City of Sandusky's Chief Building Official, Scott Thom, issued a "Notice, Order and Pending Order of Demolition" (the "Order"). Appellant appealed the Order to the City of Sandusky Building Code Board of Appeals ("the Board").

### April 29, 2021 Hearing

{¶ 3} At a hearing held before the Board on April 29, 2021, appellant stated that she did not want to see her building demolished, and that she would do whatever was needed to fix any problems. When Board member John Feick asked appellant whether she had assessed the damages herself, appellant stated that the only issues she had seen involved leaking in the skylight areas. She said she did not see any safety concerns.

{¶ 4} Feick said that his walk-through of the building earlier that day demonstrated to him that a third of the roof was rotten and beginning to fall in. Appellant said she would have her structural engineer come in to assess the condition of the roof. Feick told appellant that she would need to provide engineered structural drawings.

{¶ 5} Board member Roger Gundlach said that he saw the same items that Feick did with respect to the roof. He further commented that the mechanical systems in the building were 40-50 years old and, for safety, probably needed to be replaced.

2.

{¶ 6} Board member Greg Schmid stated that the building was in "really bad shape," recounting,

> We, obviously, all saw the water issues in that back room, but there's also a water leak in the corner of the front room; and that has nothing to do with the skylights because it's on the higher side of that roof. … The skylights are leaking. There's also some vents or piping in that roof area that had a big leak in it. The stucco is falling off the exterior of the building. It's heavily cracked. The flashing at the roof, there's areas where there is not flashing at the roof, so that water is just running into the walls.
>
> … I would like to see a testing agency come in and do a mold report and inspect the walls and see how much mold … is in that building.

{¶ 7} Feick said that if appellant were to hire an engineer, the engineer's job would be to evaluate the building and provide a set of construction documents, so the building could be fixed. Feick clarified that he did not want a report that said that the building *could* be fixed; instead, he wanted a report stating *how* the building would be fixed in order to make it safe. Specifically, he sought "a set of construction documents [showing] how to repair [the] building top to bottom." Feick stated that he wanted those documents by June 30, 2021.

{¶ 8} Next, Feick said that appellant's engineer would have to put together a timeline as to how long the repairs should take to complete.

{¶ 9} Finally, Feick stated that appellant's engineer should have cost estimates for the work to be done and that appellant should have a letter from her bank confirming that she had the funds sufficient to complete the work.

3.

{¶ 10} Appellant and all of the other Board members agreed with Feick's plan. Appellant indicated that she understood the plan, stating "[W]e have until June 30th to get the documentation to [Chief Building Official Scott Thom] about the overall structure, what needs to be done, how we supposed to do it, and a guideline."

**January 20, 2022 Hearing**

{¶ 11} At a second hearing, held on January 20, 2022, the Board stated that it had received only a report from appellant's structural engineer, and not a full set of rehabilitation plans. In addition, the Board stated that it had received no timeline, no cost estimations, and no letter from appellant's bank.

{¶ 12} Appellant and her counsel stated that they believed that the requested paperwork had been sent to the Board, but also that the necessary work had been completed by appellant's husband, and that the building was no longer a dangerous building.

{¶ 13} At one point during her comments, appellant suggested that the administrative process was being used against her in this matter due to racial discrimination:

> The reason why you are going through what you are going through is because you are trying to hold us up unjustly, and it's a racial discrimination when one of your head people tells me that I should not be queen sugar because I want to buy property in this city. No, you have – or I have a recorded conversation where they said, 'Shameka, they want you gone, and that building, too.' Scott has made that very well – very well clear in the email that he sent us to let us know that this board had already come to a decision, and his attorney, which is very smart, cut it off right there where it was supposed to go.

4.

{¶ 14} She subsequently suggested that she had been a victim of not only racial discrimination, but also sex discrimination, sexual harassment, and bullying:

> Now, my husband can fix everything. Yes, the repairs are done. Scott has not even came back to check and see. Why? Why? Why? Why? Because I'm black? Because I'm a woman?
>
> …
>
> Just because we've got this building we've got to go through this bullshit? It has been 16 years. 16 years. I've been getting sexually harassed; I've been getting bullied. It's enough. No, Mr. Feick.

{¶ 15} Ultimately, Feick said that in order to verify that the work had been done, the Board would like to have a chief building official do a walkthrough of the building, and if the building was "in a safe condition," with a deterioration percentage of no more than 50%, "then it would come out of condemnation."

## February 7, 2022

{¶ 16} In an inspection report dated February 7, 2022, Chief Building Official Scott Thom stated that he, Primary Master Plans Examiner George Poulos, and Electrical Safety Inspector Greg Capucini had performed an exterior and interior inspection of appellant's property at 937 W. Washington Street on February 4, 2022, and that, pursuant to that inspection, they found the property to be "at least 80% damaged, decayed and deteriorated from its original construction," with the property's plumbing, HVAC, electrical, lighting, and hydronic mechanical systems 95% deteriorated. According to the report:

> Roofs are not watertight, several areas are leaking, and light is visible through the roof assembly in the rear one-story

5.

portion of the structure, water damage is visible in multiple locations throughout the structure, snow was observed within the structure on the 1st and 2nd floors, water-soaked components will decay at an accelerated rate further damaging the structural elements. Mold most likely exists throughout due to roof leaks, presenting unsanitary and inadequate facilities to protect the health, safety and general welfare of human beings who may be frequenting it.

The interior is dilapidated with finishes missing, plumbing and mechanical units damaged, perhaps beyond repair, floors, walls and ceiling neglected. Utilities to the structure have been turned off.

{¶ 17} The report further stated that the Engineering Report that was submitted by appellant's engineer, Paul A. Trimarchi, P.E. had been reviewed, and that the "Exterior Repairs appear to not be in compliance with Mr. Trimarchi's instructions provided." (Emphasis in original.) In addition, "[a]ll of the repairs detailed [by Trimarchi] for the Indoor Building Addition (one-story rear), Basement and 2nd Story would have required a permit for work to commence. Application was not made, permits were not issued and none of the work specified in the Indoor Building Addition (one-story rear), Basement and 2nd Story portions of the structure was performed." Finally, the report noted that "[t]he structural assessment of the roof assembly was not done by Mr. Trimarchi as specified in the "notice, Order and Pending Order of Demolition" dated December 8, 2020…. As a requirement…to save the structure the structural assessment of the roof assembly was required."

**March 10, 2022 Hearing**

{¶ 18} At the final hearing, held on March 10, 2022, Chief Building Official Thom was sworn in and testified as to the contents of the February 7, 2022 report. He stated that

6.

the report showed that essentially nothing had changed since the Board went through the property in May 2018. He stated that the building was "in the same condition, actually a little worse."

{¶ 19} Appellant countered that "all of the outside work" on the property had been done, and that this was the work that specifically addressed the public safety hazard that she considered to be the issue in this case. She complained that George Poulos never inspected the roof in the back and that Greg [Capucini] never inspected "the other part." Speaking to the inspectors' credentials, appellant said that although Poulos was an architect, Thom was "just" a builder and, therefore, could not make determinations based on structure.

{¶ 20} Appellant asked that she be allowed to move forward with the remainder of the repair work that was prescribed in the report authored by her engineer, and Feick said, "Well, you're here because you didn't do the work."

{¶ 21} Feick concluded the hearing by saying, "I think our question is, the building's been determined by the chief building official to be unfit. It's over the 50 percent of …deterioration. And they've already determined that it's to be torn down and we're to affirm that or deny it." The Board then voted unanimously to affirm the demolition order.

{¶ 22} Appellant appealed the decision to the Erie County Common Pleas Court pursuant to R.C. 2506.01(A).

7.

**July 10, 2023 Trial Court Judgment Entry**

**{¶ 23}** In a judgment entry dated July 10, 2023, the trial court found that the Board's decision was supported by a preponderance of substantial, reliable, and probative evidence, and that appellant had failed to rebut the presumption of correctness as provided in R.C. 2506.04. The trial court noted that appellant's arguments contained new evidence that could not be properly considered due to the requirements set forth in R.C. 2506.03, but also that even if the court were to consider that new evidence, such evidence was "irrelevant" and would not "aid in rebutting the presumption of correctness." Accordingly, the trial court affirmed the Board's decision to demolish appellant's building.

**Assignments of Error**

**{¶ 24}** Appellants asserts the following assignments of error on appeal:

I.      The trial court abused its discretion by allowing written reports of an expert witness when the witness did not have specialized knowledge, skill, experience, or training regarding the subject matter of testimony as required under the Ohio Rule of Evidence 702.

II.     The trial court abused its discretion by advising appellant to terminate her attorney.

**Analysis**

**First Assignment of Error**

**Administrative Appeal Standard of Review**

**Common Pleas Court Standard of Review**

{¶ 25} R.C. 2506.04, which governs review of administrative appeals, provides:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with these rules, Chapter 2505 of the Revised Code.

{¶ 26} The trial court must "weigh[] the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board." *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 13, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). "If it does not, the court may reverse, vacate, or modify the administrative decision." *Id.*; R.C. 2506.04. "In fulfilling its role under the statute, the common pleas court begins with the presumption that the board's decision is valid; the appealing party has the burden to demonstrate otherwise." *OMNI Property Companies v. Sylvania Twp. Bd. of Zoning*

9.

*Appeals*, 2022-Ohio-3083, ¶28 (6th Dist.), citing *JSS Properties, II, LLC v. Liberty Twp. Bd. of Zoning Appeals*, 2018-Ohio-1492, ¶ 6 (5th Dist.).

## Appellate Court Standard of Review

{¶ 27} This court has recently articulated the appellate court's standard of review, as follows:

> The court of appeal's standard of review under R.C. Chapter 2506 is more limited than the trial court's review. *Kisil v. Sandusky.* 12 Ohio St.3d 30, 34 (1984). The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence. *Id.* at 34, fn. 4. Among those questions of law, the appellate court is tasked with the question of whether the common pleas court abused its discretion. *Id.* The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Id.* Such a deferential standard of review in administrative appeals acts to strongly favor affirmance. *Cleveland Clinic Found. V. Cleveland Bd. of Zoning Appeals,* 2014-Ohio-4809. ¶ 30. *See generally, Shelly Materials, Inc. v. City of Streetsboro Planning and Zoning Comm.*, 2019-Ohio-4499.

*OMNI Property* at ¶ 29.

## Trial Court Did Not Abuse its Discretion

### a. Trial Court is Confined to Transcript

{¶ 28} We initially address the trial court's determination that it could not properly consider new evidence that appellant had submitted in her initial appeal to the court.

{¶ 29} In hearing an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it

appears, on the face of that transcript or by affidavit filed by the appellant, that one of an enumerated list of circumstances applies. R.C. 2506.03(A)(1)-(5). A review of the record does not reflect the presence of any of the listed circumstances. In addition, appellant did not file an affidavit with the trial court attesting that one of these circumstances existed. Thus, the trial court did not err by prohibiting appellant from filing additional evidence.

### b. The Board's Decision was Supported by a Preponderance of Substantial, Reliable, and Probative Evidence.

{¶ 30} In the case at hand, the trial court found that the Board's decision was supported by a preponderance of substantial, reliable, and probative evidence.

{¶ 31} In dispute of this conclusion, appellant suggests that her engineer and his evidence were more credible than that submitted by the Chief Building Official. For example, appellant states that the trial court erred by favoring "the testimony of General Contractors and Attorneys instead of the written and certified proof of an engineer with over 30 Years of expertise experience in this field along with an architect who has been in business for over 20 years."

{¶ 32} Appellant further suggests that the Board itself did not have the knowledge or experience to hear the case. Specifically, she states: "[T]he Board does not and do not have any specialized knowledge, skill, experience, or training regarding the demolition inspection that they spoke on."

{¶ 33} Finally, appellant argues that the trial court "chose to overlook the facts and the truth."

11.

**{¶ 34}** We begin with appellant's claim that the Board and the Building Official lacked the qualifications to testify as expert witnesses under Evid.R. 702. It is well-established that to testify as a witness under Evid.R. 702, the witness "must demonstrate some degree of knowledge, skill, experience, training, or education in the field the witness seeks to evaluate." *Taulbee v. Dunsky,* 2003-Ohio-5988, ¶17 (12th Dist.), citing *McKinney v. Schlatter,* 118 Ohio App.3d 328 (12th Dist.1997). However, it is also well-established that "'[s]trict and technical rules of criminal or civil judicial hearings do not apply to [administrative hearings].'" *Ohio Div. of Securities v. Treece*, 2022-Ohio-3267, ¶ 17 (6th Dist.), quoting *Clayton v. Ohio Bd. of Nursing*, 2016-Ohio-643, ¶ 34.

**{¶ 35}** In the instant case, the record contains no evidence addressing the specific degree of knowledge, skill, experience, training, or education possessed by the Board members and Building Official who were tasked with evaluating the condition of appellant's property. However, to be a member of the Board requires certain qualifications, as set forth in Sandusky Codified Ordinance 1309.01. Sandusky Codified Ordinance 1309.01(c) provides:

> The Board shall consist of five individuals, one from each of the following professions or disciplines:
> (1) Registered design professional with architectural experience or a builder or superintendent of building construction with at least ten years' experience, five of which shall have been in responsible charge of work.
> (2) Registered design professional with structural engineering experience.
> (3) Registered design professional with mechanical and plumbing engineering experience or a mechanical contractor with at least ten years' experience, five of which shall have been in responsible charge of work.

12.

(4) Registered design professional with electrical engineering experience or an electrical contractor with at least ten years' experience, five of which shall have been in responsible charge of work.

(5) Registered design professional with fire protection engineering experience or a fire protection contractor with at least ten years' experience, five of which shall have been in responsible charge of work.

{¶ 36} Sandusky Codified Ordinance 1309.02(a)(1) provides that the Building Official serves as an ex officio, non-voting member of the Board, and appellant acknowledges Chief Building Official Thom's status in this case as that of a "general contractor."

{¶ 37} In the instant case, there is nothing in the record to indicate that either the Building Official or the Board members who evaluated appellant's appeal *lacked* the credentials (as established by ordinance or otherwise) to evaluate building standards. We, therefore, find that the trial court did not abuse its discretion either in accepting the Building Official's testimony or in accepting the Board members' qualifications to hear the appeal.

{¶ 38} Next, we look at the evidence that was presented to the Board and, ultimately, formed the basis of the Board's decision. In this case, the Building Official stated that appellant's property was 80% deteriorated. Observing that there was visible light coming through the roof, he opined that mold likely existed throughout the structure. In addition, he stated that the plumbing, HVAC, electrical, lighting, and hydronic mechanical systems were 95% deteriorated.

13.

{¶ 39} By contrast, appellant's engineer failed to submit drawings and repair timelines to the Board. He also did not appear before the Board in order to explain his findings or rebut the Building Official's remarks. Appellant's engineer only submitted a repair summary to the Board.

{¶ 40} The Board, after weighing the credibility of both appellant's and the Building Official's evidence, determined that the property was unsafe. We find that the trial court, upon its review, did not abuse its discretion when it concluded that the Board's decision was supported by a preponderance of reliable, probative, and substantial evidence, particularly in its judgment of the witnesses and their testimonies. We additionally find that neither the Board nor the common pleas court erred in disregarding appellant's vaguely-stated and otherwise unsubstantiated claims of discrimination, harassment, and bullying.

{¶ 41} Accordingly, appellant's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 42} In her second assignment of error, appellant simply states that the trial court advised her to terminate her attorney. Looking to the record, we see that appellant, pro se, filed a motion for recusal in the trial court on May 10, 2023. Attached to her motion was a brief that stated that the judge and his clerk had advised her that she "didn't need a counsel." In support of this accusation, appellant attached a picture of a text message from December 2022, which stated "Judge said you are ok right now with the atty situation." We begin by stating that this limited evidence does not support the contention that the trial court judge advised appellant to discharge her attorney.

14.

**{¶ 43}** To the extent that appellant seeks our direct review of the trial court's denial of her motion for recusal, we find that we are without jurisdiction to conduct such review, because "[o]nly the Chief Justice of the Ohio Supreme Court or her designee has the authority to pass upon the disqualification of a common pleas court judge." *State v. Quinn*, 2014-Ohio-340, ¶ 31 (6th Dist.). Accordingly, appellant's second assignment of error is found not well-taken.

### Conclusion

**{¶ 44}** For all of the foregoing reasons, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J.       _____
                                                   JUDGE

Myron C. Duhart, J.     

                                      _____
Charles E. Sulek, P.J.                                    JUDGE
CONCUR.

                                      _____
                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.